**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:26-cv-20843-BLOOM**

| | |
|---|---|
| KEVIN CONNELLY, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| THE ART OF SHAVING-FL, LLC, | ) |
| | ) |
| *Defendant.* | ) |

**DEFENDANT THE ART OF SHAVING-FL, LLC'S**
**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant The Art of Shaving-FL, LLC ("Defendant" or "TAOS"), by and through its undersigned counsel, hereby moves this Court to dismiss Plaintiff Kevin Connelly's Class Action Complaint (the "Complaint").

## I.    INTRODUCTION

Each of Plaintiff's asserted claims under the Telephone Consumer Protection Act ("TCPA") fails as a matter of law for multiple reasons.  Most basically, Plaintiff's claims necessarily fail because they are premised on his alleged receipt of text messages, which are not "telephone calls."  Section 227(c)(5) of the TCPA, which provides a private right of action for violations of the TCPA's implementing regulations, is limited to violative "telephone call[s]"— not text messages.  47 U.S.C. § 227(c)(5).  Courts exercising their duty to independently interpret the TCPA following the Supreme Court's decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)—including district courts in the Eleventh Circuit—have concluded that "telephone call," does not include text messages based on a plain reading of the statute.  *See, e.g., Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270 (N.D. Fla. Aug. 26, 2025); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Lopresti v. Nouveau Essentials Marketing LLC*, No. 5:25-cv-00282-CEM-RL, 2026 WL 964758 (M.D. Fla. Feb. 26, 2026); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-02811-TWT, 2026 WL 456919, at *3–5 (N.D. Ga. Feb. 17, 2026); *Radvansky v. Kendo Holdings, Inc., dba Fenty Beauty*, No. 3:23-cv-00214-LMM, 2026 WL 810929, at *2–3 (N.D. Ga. Feb. 12, 2026); *James v. Smarter Contact, Inc., et al.*, No. 8:25-cv-01657-KKM-SPF, 2026 WL 879244, at *5 (M.D. Fla. Mar. 31, 2026).  Here, because Plaintiff only alleges the receipt of text messages, his claims against TAOS for violations of the TCPA's regulations must be dismissed.

Even so, Plaintiff's claims separately fail because the Complaint does not support any plausible inference that the text messages he allegedly received are "telephone solicitations" or "telemarketing." Calls qualify as "telephone solicitations" and "telemarketing" only if their purpose is to encourage the purchase, rental, or investment in any property, goods, or services. 47 U.S.C. § 227(a)(4). A cursory review of the subject text messages shows that they did not encourage Plaintiff to purchase anything. Instead, their purpose was solely to enable Plaintiff to reply "Y" to subscribe to receive *subsequent* marketing messages by completing a double opt-in. Indeed, courts have found that similar confirmation messages do not constitute telephone solicitations or telemarketing due to their non-solicitous purpose. *See Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F.Supp.3d 466, 480–81 (S.D.N.Y. 2018). TAOS submits that the same result should be reached here, and Plaintiff thus cannot satisfy essential elements of his claims asserting violations of 47 C.F.R. §§ 64.1200(c) and (d).

## II.   <u>ALLEGATIONS</u>

Plaintiff seeks to bring a class action against TAOS under the TCPA. Plaintiff alleges that "[b]eginning at least in August 2024," TAOS sent or caused to be sent multiple text messages to his phone number ending in 1456 ("Plaintiff's Number"), which he alleges is his residential number that is registered on the National Do Not Call Registry ("DNC Registry"). Compl. ¶¶ 10, 14, 41–43. According to the Complaint, Plaintiff received multiple text messages in August of 2024 (the "August 2024 Messages"). *Id.* ¶ 14. Plaintiff alleges that he responded "Stop" on August 30, 2024, after which he received a message from TAOS confirming his opt-out. *Id.* ¶¶ 14–15. Plaintiff does not allege that he responded "Stop" prior to August 30, 2024. A screenshot purporting to reflect the August 2024 Messages is included in the Complaint. *See id.*

The Complaint further alleges that, over a year later, on November 3, 2025, Plaintiff received two additional messages from TAOS at 6:25 p.m. and 10:47 p.m., respectively, to which

he responded "Stop."  *Id.* ¶¶ 16-17.  Thereafter, Plaintiff allegedly received two additional messages on the same day at 10:55 p.m. and 11:08 p.m., and then another message at 4:12 a.m. on November 4, 2025.  *Id.* ¶ 18.  According to screenshots contained in the Complaint, all five of the messages Plaintiff allegedly received on November 3 and November 4, 2025 (the "Opt-In Confirmation Messages") read:

> The Art of Shaving: Reply Y to subscribe to recurring automated personalized marketing alerts (e.g., cart reminders) from The Art of Shaving. Msg and data rates may apply. Msg frequency varies. Reply HELP for help, STOP to cancel. Privacy: https://aos.attn.tv/cl/vHm.

*Id.*  Plaintiff alleges that "[a]t no point in time did Plaintiff provide Defendant with his prior express written consent to be contacted after opting out."  *Id.* ¶ 38.  Thus, Plaintiff alleges, TAOS "does not honor reasonable consumer requests to opt-out of text message solicitations" which "demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant."  *Id.* ¶¶ 24, 27.  Based on these allegations, Plaintiff asserts four causes of action against TAOS under § 227(c)(5) of the TCPA: (1) Violation of 47 C.F.R. § 64.1200(c)(2) (the "DNC Registry Claim"); (2) Violation of 47 C.F.R. § 64.1200(d) (the "Internal DNC Claim"); (3) Violation of 47 C.F.R. § 64.1200(c)(1) (the "Quiet Hours Claim"); and (4) "Knowing and/or Willful Violations of the TCPA."  *Id*. ¶¶ 62–96.  Plaintiff asserts claims on behalf of himself and three putative classes.  *Id.* ¶¶ 50–51.

## III.   LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the factual allegations of a complaint must generally be taken as true when ruling on a motion to dismiss, a court should not accept

"conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678–79 (same). Rather, plaintiffs are required to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (internal quotation marks omitted). A court may also dismiss a claim pursuant to Rule 12(b)(6) "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## IV.     ARGUMENT

### A.     Plaintiff Does Not Have a Right of Action Because Section 227(c)(5) of the TCPA Does Not Apply to Text Messages.

Each of Plaintiff's claims fails as a matter of law because TCPA § 227(c)(5)—the statutory provision on which the claims rely for a private right of action—does not apply to text messages. Under § 227(c)(5), only "[a] person who has received more than one ***telephone call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c)] may . . . bring . . . an action." 47 U.S.C. § 227(c)(5) (emphasis added). Here, Plaintiff's claims are all based on the receipt of ***text messages***. *See* Compl. ¶ 3 ("This case arises from Defendant's transmission of multiple unauthorized text messages[.]"). Applying "ordinary principles of statutory interpretation" to the TCPA as directed by the Supreme Court in *McLaughlin*, a text message is not a "telephone call." *See Davis v. CVS Pharmacy, Inc.*, 797

5

F.Supp.3d 1270, 1272 (N.D. Fla. Aug. 26, 2025) ("[B]ecause a text message is not a 'telephone call,' [plaintiff] has not stated a plausible claim."). Plaintiff therefore has no private right of action under section 227(c)(5), and his claims should be dismissed.

Below, Section IV.A.1 addresses how the ordinary meaning of "telephone call," prior to any specialized canons of construction, does not encompass text messages. As analyzed in Section IV.A.2, this conclusion is further supported by canons of construction flowing from the fact Congress has amended other sections of the TCPA to include text messages, but has left § 227(c)(5) unchanged. Finally, Section IV.A.3 explains how the FCC's order interpreting "telephone call" to include text messages is not entitled to deference, and that cases relying on pre-*McLaughlin* authority deferring to the FCC's interpretation are inapposite.

          1.        <u>The Ordinary Meaning of "Telephone Call" Does Not Encompass Text Messages.</u>

The term "telephone call" does not have a special definition in the TCPA. *See generally* 47 U.S.C. § 227. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Courts "interpret the words of a statute by 'taking their ordinary, contemporary, common meaning' **at the time Congress enacted the statute**." *Sumpter v. Sec'y of Labor*, 763 F.3d 1292, 1296 (11th Cir. 2014) (quoting *Perrin*, 444 U.S. at 42) (emphasis added); *see also Davis*, 797 F.Supp.3d at 1272 ("Courts must interpret every statute 'in accord with the ordinary public meaning of its terms at the time of its enactment.'"). While the canons of construction are "useful tools to discern that ordinary meaning," "if the text is clear, the analysis begins and ends there." *Davis*, 797 F.Supp.3d at 1272–73.

6

As numerous courts post-*McLaughlin* have concluded, the ordinary meaning of "telephone call" does not encompass text messages. *See, e.g., id.* at 1273. As Chief Judge Winsor aptly reasoned in *Davis*, "[n]o normal person refers to a text message, or thinks of a text message, as a 'call.'" *Id.* at 1273 ("No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner."). Similarly, the court in *El Sayed v. Naturopathica Holistic Health, Inc.* concluded that "in common American English, a 'telephone call' and a 'text message' are separate and distinct forms of communication[.]" No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759, at *1 (M.D. Fla. Oct. 24, 2025) (dismissing § 227(c)(5) claim alleging receipt of text messages). This ordinary meaning would not be different at the time of the TCPA's enactment in 1991, as "[t]ext messaging was not an available technology in 1991, and thus, 'telephone call' would not have included text messages or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp.3d 894, 899 (C.D. Ill. 2025).

These conclusions necessarily follow from the dictionary definitions of the terms "telephone" and "call" at the time the TCPA was enacted. *See James v. Smarter Contact, Inc.*, No. 8:25-cv-01657-KKM-SPF, 2026 WL 879244, at *3 (M.D. Fla. Mar. 31, 2026) (dismissing with prejudice § 227(c)(5) complaint alleging receipt of text messages). The *James* court, citing multiple contemporary dictionaries, observed that the noun "call" was defined as "an act or instance of telephoning" or "the act of calling on the telephone." *Id.* (citing THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 297 (2d ed. 1987); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 162 (10th ed. 1993)). "Telephone" was defined as "an apparatus, system, or process for transmission of **sound or speech** to a distant point" or "an instrument for **reproducing sounds at a distance**…one in which **sound is converted** into electrical impulses for transmission by

wire[.]" *Id*. (citing THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1952 (2d ed. 1987); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1211 (10th ed. 1993)) (emphasis in original). "Thus, a text message, which does not use a telephone to reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of 'telephone call' from 1991." *Id*.; *see also, e.g.*, *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25-cv-01282, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026) ("Under these definitions, 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance.").

This ordinary-meaning interpretation of § 227(c)(5) that "telephone calls involve the use of sounds and a voice" underscores "that text messages do not present the same type of nuisance that phone calls do." *Richards v. Fashion Nova, LLC,* No. 1:25-cv-01145-TWP-MKK, 2026 WL 847568, at *3 (S.D. Ind. Mar. 26, 2026) (dismissing § 227(c)(5) complaint alleging receipt of text messages). For example, "a text message does not require that a person pick up a call, listen to a voice, or tie up their phone's line." *Fashion Nova*, 2026 WL 847568, at *3. For these reasons, courts in the Eleventh Circuit have held that the ordinary meaning of "telephone call" does not encompass text messages. *See Davis*, 797 F.Supp.3d at 1273; *El Sayed*, 2025 WL 2997759, at *2 ("[T]he statutory text here is clear, and a text message is not a 'telephone call.'"); *Lopresti v. Nouveau Essentials Marketing LLC*, No. 5:25-cv-00282-CEM-RL, 2026 WL 964758, at *5 (M.D. Fla. Feb. 26, 2026) (adopting reasoning of *El Sayed*); *James*, 2026 WL 879244, at *3 ("The ordinary public meaning of 'telephone call' in 1991 did not include or embrace a modern text message."); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-02811-TWT, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) ("The three district courts in this Circuit that have addressed the issue have each concluded that the phrase 'telephone call' in § 227(c)(5) does not include text

8

messages, and this Court will follow suit."); *Radvansky v. Kendo Holdings, Inc., dba Fenty Beauty*, No. 3:23-cv-00214-LMM, 2026 WL 810929, at *2 (N.D. Ga. Feb. 12, 2026) ("[T]he statutory text here is clear, and a text message is not a 'telephone call.'").

Courts in other jurisdictions are in accord.  *See, e.g.*, *Jones*, 792 F.Supp.3d at 899 ("Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages."); *Stockdale*, 2026 WL 591842, at *3 (holding that plain meaning of "telephone call" under Section 227(c)(5) of the TCPA does not include text messages); *Fashion Nova*, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026) ("Because the Court conclude [sic] that 'telephone call' under § 227(c)(5) of the TCPA does not include text messages, [plaintiff] fails to state a claim"); *Richards v. Shein Dist. Corp.*, No. 1:25-cv-01385-TWP-TAB, 2026 WL 847584, at *5 (S.D. Ind. Mar. 26, 2026) (same).  Because a plain reading of the term "telephone call" does not include text messages, the Court should dismiss Plaintiff's Complaint in its entirety.  *See Davis*, 797 F.Supp.3d at 1275–76  (dismissing Plaintiff's § 227(c)(5) claims premised on the receipt of text messages for failure to state a claim); *El Sayed*, 2025 WL 2997759, at *2 (same); *James*, 2026 WL 879244, at *5 (same); *1-800-Flowers.com*, 2026 WL 456919, at *5 (same); *Jones*, 792 F.Supp.3d at 902 (same); *Stockdale*, 2026 WL 591842, at *4 (same); *Lopresti*, 2026 WL 964758 at *6 (recommending judgment on the pleadings in defendant's favor); *Kendo Holdings*, 2026 WL 810929, at *3 (granting judgment on the pleadings in defendant's favor).

      2.    The TCPA's Inclusion of Text Messages in Other Sections Further Supports Excluding Text Messages from Section 227(c)(5).

Interpreting "telephone call" in § 227(c)(5) as excluding text messages is further supported by canons of construction flowing from the fact Congress has used other language in the TCPA, outside of § 227(c)(5), when it wanted to include text messages.  Under the meaningful-variation canon and canon against surplusage, when "Congress uses different terms" in different subsections

of a statute, those terms "hold different meanings, especially when the same meaning would render one of the terms superfluous." *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025). In conjunction with these canons, other provisions of the TCPA confirm that "telephone call" does not include text messages. Section 227(a)(4) defines "telephone solicitation" as "the initiation of a ***telephone call or message***…" 47 U.S.C. § 227(a)(4) (emphasis added). If "telephone call" extended to both telephone calls and text messages, then "or message" in § 227(a)(4) would be entirely superfluous. The fact that Congress chose to include "message" in § 227(a)(4) but not § 227(c)(5) thus confirms its intent to exclude text messages from the scope of § 227(c)(5).

Courts addressing § 227(c)(5) claims post-*McLaughlin* have dismissed the claims after reasoning that § 227(a)(4)'s use of "telephone call or message" demonstrates that "telephone call" does not encompass text messages. *See, e.g.*, *Davis*, 797 F.Supp.3d at 1274 ("Courts should 'presume that, ***when a statute uses one term in one place and a distinct term elsewhere, the difference matters***—that is, the distinct words have different meanings.'") (citation omitted) (emphasis added); *Kendo Holdings*, 2026 WL 810929, at *3 ("Congress's decision to use a different term 'in a neighboring provision only undermines [Plaintiff's] position' because '[i]t shows that Congress does not use the term telephone call to encompass all messages.'"); *Fashion Nova*, 2026 WL 847568, at *3 ("If 'telephone call' already included 'calls and messages,' then the TCPA's definition of 'telephone solicitation' would be redundant.").

Recent statutory history further supports this conclusion. Since enacting the TCPA in 1991, Congress has ***twice*** amended the statute ***to include reference to "text messages"*** and both times treated text messages as a distinct action from placing a telephone call. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, sec. 503(a) (codified at 47 U.S.C.

10

§§ 227(e)(8)(A)–(B)) (distinguishing between "a call made using a voice service" and "a text message sent using a text messaging service"); Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, sec. 10(a), 133 Stat. 3274, 3284 (2019) (codified at 47 U.S.C. § 227(i)) (using phrase "a call or text message"). If Congress understood the term "telephone call" to include a text message, it would not have used different terminology when expanding the Act to cover text messages under certain circumstances. *See, e.g.*, 47 U.S.C. § 227(e)(8) (addressing abuse of caller identification services to mask one's identity "in connection with any voice service or text messaging service."); 47 U.S.C. § 227(i) (including reference to "call[s]" and "text message[s].").

As other courts in the Eleventh Circuit observed, "the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction." *El Sayed*, 2025 WL 2997759, at *2; *see 1-800-Flowers.com*, 2026 WL 456919, at *3 ("Congress has amended the TCPA as recently as 2019 to add the phrase 'text message' in a neighboring provision, § 227(e)(8)(C), and chose to leave § 227(c)(5) unamended. This distinction leads the Court to presume that Congress intended § 227(c)(5) to encompass only telephone calls because 'when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" (citation omitted)); *Kendo Holdings*, 2026 WL 810929, at *3 (quoting *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025)) ("Congress has since amended the TCPA and specifically uses the term 'text message' in a neighboring provision," indicating that the term "telephone call" does not include text messages). If Congress intended § 227(c)(5) of the TCPA to apply to text messages, it twice showed it knew how to do so and chose not to. *See Fashion Nova*, 2026 WL 847568, at *4 ("The

11

reference to text messages in § 227(e) shows that if Congress had wanted § 227(c) to apply to text messages, it knew how to say so.").  Under canons of construction, the fact Congress did not supports the ordinary meaning interpretation that "telephone call" does not include text messages.

3.      Giving "Appropriate Respect" to the FCC's Interpretation Should Not Change the Statutory Interpretation of "Telephone Call."

As explained above, using ordinary principles of statutory interpretation, the term "telephone call" in § 227(c)(5) does not encompass text messages.  While another judge of this Court has held that "telephone call" *does* include text messages, he reached this conclusion without applying ordinary principles of statutory interpretation.  *See Piet v. Office Depot, LLC*, No. 9:24-cv-81488-WPD, 2025 WL 4676030, at *3 (S.D. Fla. Nov. 25, 2025) ("[I]nterpreting the TCPA on a blank slate under ordinary principles of statutory interpretation, this Court would tend to agree with the district courts who have determined that a call does not include a text message."); Order at 5 n.2, *Glasel v. Office Depot, LLC*, No. 9:24-cv-80910-WPD (S.D. Fla. Nov. 25, 2025), ECF No. 38 (same); *McGonigle v. Office Depot, LLC*, No. 25-80069-CIV-DIMITROULEAS (S.D. Fla. Nov. 25, 2025), ECF No. 29 (same).  Instead, these decisions cited an FCC order from 2003 stating that "[the TCPA] encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115, ¶ 165 (2003) ("2003 FCC Order").

Under the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025), the 2003 FCC Order does not displace the ordinary principles of statutory construction.  In *McLaughlin*, the Supreme Court addressed whether district courts were bound by the FCC's interpretations of the TCPA because of a separate statute providing exclusive authority to the court of appeals to determine validity of FCC orders.  606 U.S. at 152 (citing 28 U.S.C. § 2324(1)).

Citing *Loper Bright*, the Court in *McLaughlin* ultimately directed that district courts "should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." 606 U.S. at 168; *see also id.* at 155 ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." (citing *Loper Bright*, 603 U.S. at 402)). *Loper Bright* makes clear what "appropriate respect" entails for statutory interpretation. In *Loper Bright*, the Court overruled *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and held that "Courts must exercise their independent judgment" interpreting statutes and the Administrative Procedure Act generally "bars judges from disregarding that responsibility just because an Executive Branch agency views a statute differently." 603 U.S. at 412. The Court noted that "attention to the judgment of the Executive Branch may help inform that inquiry" of statutory interpretation, *id.* at 413, when that Executive Branch agency's interpretation of the statute "rests on factual premises within [the agency's] expertise," *id.* at 402.

Here, the 2003 FCC Order's interpretation with regards to text messages does not rest on factual premises within the agency's expertise. As one court in this District held with respect to the very issue of whether § 227(c)(5) applies to text messages, "agencies have no special competence in resolving statutory ambiguities." *McGonigle v. Pure Green Franchise Corp.*, No. 0:25-cv-61164-AHS, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026) (staying discovery because "whether § 227(c) includes a cause of action for text messages" is a question of law that does not require discovery and courts have "special competence in resolving statutory ambiguities."). As even the *Piet, Glasel* and *McGonigle* court recognized, "the factual premises here—the difference between a call and a text message—is not highly specialized and would not

13

'give an Executive Branch interpretation particular power to persuade[.]'" *Piet*, 2025 WL 4676030, at \*3; Order at 5 n.2, *Glasel*, ECF No. 38 (same), *McGonigle*, ECF No. 29 (same).

The court's reasoning in these cases for why "appropriate respect" entailed deference to the 2003 FCC Order is based on (1) the Eleventh Circuit deferring to the FCC under the *Chevron* standard on **other issues** of TCPA interpretation, and (2) the fact that the FCC's interpretation "has been controlling for nearly twenty-five years." 2025 WL 4676030, at \*3 (S.D. Fla. Nov. 25, 2025) ("[T]his Court will continue to follow existing Eleventh Circuit precedent and holds that a text message is a call for the purpose of the TCPA . . . although [the] Eleventh Circuit has not directly addressed whether a 'call' includes a text message under the TCPA. . . ."). But the Court in *Loper Bright* analyzed whether an agency's reasoning had the "power to persuade" not the "power to control." 603 U.S. at 402. And if "appropriate respect" meant that a district court could adopt an agency's non-expert determination of what the law means over the normal statutory interpretation simply because the agency's interpretation on other issues has been controlling for a long time, then district courts would not be "exercis[ing] their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 412. For this reason, other courts in this Circuit have held that, under *Loper Bright* and *McLaughlin*, the 2003 FCC Order is not entitled to deference on whether § 227(c)(5) encompasses text messages. *See, e.g.*, *Davis*, 797 F.Supp.3d at 1275 ("One can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text. Thus, even assuming the FCC order clearly defined 'telephone calls' as that term is used in § 227(c)(5), 'appropriate respect' for that conclusion would not require a different outcome here."); *1-800-Flowers.com*, 2026 WL 456919, at \*4 ("[T]his delegation did not authorize the FCC to determine that 'telephone call' includes text messages."). Notably, the court

in *Piet* recognized the tension between the FCC's interpretation and the plain language of the TCPA, stating that "[h]owever, interpreting the TCPA on a blank slate under ordinary principles of statutory interpretation**, this Court would tend to agree with the district courts who have determined that a call does not include a text message**. *Piet*, 2025 WL 4676030, at *3 n.2 (emphasis added).  In other words, but for the court's improper reliance on FCC precedent, it would "tend to agree" that a call does not include a text message under section 227(c)(5).

In two other Section  227(c)(5) cases, this Court has stated that "a text message constitutes a 'call' under the TCPA."  *Bosley v. A Bradley Hosp. LLC*, No. 1:25-cv-22336-BB, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025); *Taylor v. Cider (US) Holding Ltd.*, No. 25-cv-24496-BB, 2026 WL 91453, at *2 (S.D. Fla. Jan. 13, 2026).  However, in both cases, the issue was uncontested, and thus, the Court's decisions did not substantively engage with the meaning of the statutory term "telephone call."  *Bosley*, 2025 WL 2686984, at *5 ("There is no dispute that Plaintiff has adequately alleged the first two elements for both Counts I and II."); *Taylor*, 2026 WL 91453, at *2 (same); *see also Kendo Holdings*, 2026 WL 810929, at *2 ("[I]n *Bosley*, the court did not substantively address the question because it appears the parties in that case did not dispute whether a text message constitutes a 'call' under the TCPA.").  Further, this Court's statements were accompanied by pre-*McLaughlin* cases which deferred to the 2003 FCC Order.[1]  *Bosley*,

---

[1] The *Bosley* and *Taylor* statements also cite the pre-*McLaughlin* decision in *Eldridge v. Pet Supermarket Inc.*, 446 F.Supp.3d 1063, 1067–68 (S.D. Fla. 2020) and its quote that "[a] text message to a cell phone qualifies as a 'call' under the TCPA." *Bosley*, 2025 WL 2686984, at *5; *Taylor*, 2026 WL 91453, at *2.  Similarly, the parties in *Eldrige* did not dispute whether text messages constitute telephone calls; they disputed Article III standing. *See, e.g.*, 446 F.Supp.3d at 1065.  And the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, which *Eldrige* cites, clearly states that the parties did not dispute whether a text message could be a "telephone call." 577 U.S. 153, 156 (2016).  Notably, the Supreme Court's later decision in *Facebook, Inc. v. Duguid*, reiterated that it expressly did not resolve the issue of whether text messages constitute phone calls because the parties did not dispute it.  592 U.S. 395, 400 (2021).

2025 WL 2686984, at \*5 (citing *Pariseau v. Built USA, LLC*, 619 F.Supp.3d 1203, 1206 (M.D. Fla. 2022)); *Taylor*, 2026 WL 91453, at \*2 (same). These decisions did not address the *McLaughlin* and *Loper Bright* inquiry of determining what "appropriate respect" means for the 2003 FCC Order.

In any event, the 2003 FCC Order contains no substantive analysis of statutory interpretation to which this Court should give respect. The 2003 FCC Order summarily stated that "[The TCPA] encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service." 2003 FCC Order, ¶ 165. In Paragraph 165, the only citations are to 47 U.S.C. § 227(b) of the TCPA and 47 C.F.R. § 64.1200(a). Importantly, § 64.1200(a) was promulgated under § 227(b)—which governs restrictions on the use of "an automatic telephone dialing system or an artificial or prerecorded voice"—and not under § 227(c). By tethering its definition of "call" to § 64.1200(a), even the FCC made clear that, absent express specification, the term "call" does not encompass a "text message" or "SMS message." Put differently, the 2003 FCC Order addressed only text messages sent through an autodialer or prerecorded voice system under § 227(b); it did not reach the separate provisions of the TCPA or its regulations at issue here.[2] The "appropriate respect" due to the 2003 FCC Order cannot displace the better statutory

---

[2] Separately, the argument that text messages include telephone calls is undercut by the fact that the FCC itself distinguishes between the two and does not treat the latter as included in the former. The FCC has amended the relevant DNC regulation, Section 64.1200, multiple times. In those amended sections, the FCC specifies when "calls" include text messages, *e.g.*, 47 C.F.R. § 64.1200(a)(9) ("As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call."), and in other sections the FCC refers to "voice calls" and "text messages" as two distinct concepts, *id.*, § 64.1200(a)(9)(iv) (regulating "voice calls and text messages" for medical providers). The FCC knows how to distinguish between calls and texts in its regulations and yet has never expressly amended its "telephone solicitation" definition to include text messages, despite amending other sections to include "text messages."

16

interpretation that "telephone call" in § 227(c)(5) does not encompass text messages. Because Plaintiff's Complaint relies on the receipt of text messages, rather than "telephone calls", the Court should dismiss the Complaint in its entirety for failure to state a claim. *See, e.g.*, *Davis*, 797 F.Supp.3d at 1275.

**B.**     **The August 2024 Messages and Opt-In Confirmation Messages Do Not Satisfy Other Elements of Plaintiff's TCPA Claims.**

Even if text messages could give rise to a private right of action under § 227(c)(5) of the TCPA (which they cannot), Plaintiff still fails to state a claim because he cannot satisfy essential elements under the Internal DNC, DNC Registry, and Quiet Hours provisions of the TCPA's implementing regulations.

1.     The August 2024 Messages Are Not Actionable Because They Predate Plaintiff's Opt-Out Request.

Plaintiff's claims with respect to the August 2024 Messages all fail because Plaintiff alleges he opted out only after receiving the August 2024 messages. Plaintiff alleges that that he began receiving messages from TAOS beginning "at least in August 2024." Compl. ¶¶ 14–15. He then alleges that he received the August 2024 Messages prior to his August 30, 2024 "STOP" response. *Id.* Plaintiff does not allege that TAOS did not have express written permission prior to the August 30, 2024 "STOP" response; instead, he alleges only that TAOS lacked written permission "after" that alleged opt-out. Compl. ¶ 38 ("At no point in time did Plaintiff provide Defendant with his express written consent to be contacted **after opting out**." (emphasis added); *Real v. City of Ft. Myers*, 787 Fed. Appx. 624, 626 (11th Cir. 2019) ("The complaint must introduce facts that plausibly establish each essential element of the asserted cause of action."). A necessary element of an Internal DNC Claim requires that Plaintiff made a "do-not-call request." 47 C.F.R. § 64.1200(d) (requiring callers to honor a subscriber's "do-not-call request"). Because Plaintiff admits that he did not make an opt-out request until at least August 30, 2024, Compl. ¶¶ 14–15,

17

Plaintiff fails to state an Internal DNC Claim.  *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (individuals who do not make a request to no longer receive calls lack standing to pursue an Internal DNC Claim).  Similarly, the messages Plaintiff received before his "STOP" response cannot support Plaintiff's DNC Registry Claim and Quiet Hours Claim because calls made with "prior express invitation or permission" or to those with whom the caller had an "established business relationship" are not "telephone solicitations"—an essential element of both claims.  *See* 47 C.F.R. § 64.1200(f)(15) (exempting from the definition of "telephone solicitation" calls to "any person with that person's prior express invitation or permission" and "any person with whom the caller has an established business relationship").  Because Plaintiff admits that he did not attempt to revoke his previously provided consent until August 30, 2024 when he responded "STOP", messages preceding his response cannot support his DNC Registry Claim and Quiet Hours Claim. *See Cordoba*, 942 F.3d at 1271 (no standing for plaintiffs who had not actually requested to no longer receive calls).

2. <u>The Opt-In Confirmation Messages Are Not "Telephone Solicitations."</u>

The Opt-In Confirmation Messages that Plaintiff allegedly received on November 3 and November 4, 2025 likewise cannot support Plaintiff's Claims because they are not "telephone solicitations" or "telemarketing."  Section 64.1200(c) on which Plaintiff's DNC Registry Claim and Quiet Hours Claim rests, restricts making a "telephone solicitation" to a residential telephone subscriber who has registered his or her telephone number on the DNC Registry.  47 C.F.R. § 64.1200(c).  Section 64.1200(d) on which Plaintiff's Internal DNC Claim relies similarly prohibits "telemarketing" calls unless the caller has instituted procedures for maintaining an internal DNC list.  47 C.F.R. § 64.1200(d).  Both "telephone solicitation" and "telemarketing" are defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any

18

person." *Id*. § 64.1200(f)(13), (15).   Thus, a call or message must contain content intended to induce the recipient's purchase of property, goods, or services in order to be subject to sections 64.1200(c) or (d) of the TCPA's regulations.  *See, e.g.*, *Vallianos v. Schultz*, No. C19-0464-JCC, 2019 WL 4980649, at *3–4 (W.D. Wash. Oct. 8, 2019) (dismissing plaintiff's claim for unsolicited text messages where message content did not encourage plaintiff to make any purchase); *Williams-Diggins v. Republic Servs.*, No. 3:18-cv-02313, 2019 WL 5394022, at *2 (N.D. Ohio Apr. 25, 2019) (dismissing claim under section 64.1200(c) despite allegation that she was not defendant's customer, because "the purpose of the calls was to inform, not to solicit business . . . .").

The prevailing authority makes clear that whether a call or message qualifies as a solicitation or telemarketing depends on its purpose and intent, as reflected in the plain language of its content.  *See Schulz v. Infogroup, Inc.*, No. 3:19-cv-1620-N, 2020 WL 4201636, at *2–3 (N.D. Tex. July 21, 2020) (dismissing TCPA claim because the calls' purpose was not to encourage plaintiff to purchase any good or service and therefore were not "telemarketing"); *Edelsberg v. Vroom, Inc.*, No. 16-cv-62734, 2018 WL 1509135, at *4–5 (S.D. Fla. Mar. 27, 2018) (considering the purpose of a text message, rather than plaintiff's categorization, in determining whether it was "telemarketing"). "Court[s] evaluate[] the question of whether a message or phone call constitutes a telephone solicitation by looking at the context of the message and by using 'a measure of common sense.'" *Vallianos*, 2019 WL 4980649, at *3.

Accordingly, courts have held calls or messages intended to merely facilitate a recipient's enrollment to receive marketing text messages in the future do not constitute marketing. *See Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F.Supp.3d 466 (S.D.N.Y. 2018).  The court in *Rotberg* granted the defendant's motion to dismiss because the plaintiff failed to allege that an "initial marketing text message"—which referred the plaintiff to defendant's webpage that "set[] forth the

19

terms and conditions by which he could consent to receive marketing materials"—constituted telemarketing. *Id*. at 478–79. In so holding, the court made clear that "a caller seeking out a consumer's [prior] express written consent to send *subsequent* telemarketing or advertising texts is not as a matter of law already engaged in telemarketing." *Id*. at 479 (emphasis in original). Courts similarly find that messages sent in order to complete a registration are likewise not marketing. *An Phan v. Agoda Co. Pte. Ltd*., 351 F.Supp.3d 1257, 1265 (N.D. Cal. 2018) ("[T]his Court holds that the text messages [defendant] sent to [plaintiff] were neither advertising nor telemarketing. . . . [T]hese messages were sent as part of an ongoing business transaction"); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-cv-03546-WHO, 2015 WL 7454260 at *4 (N.D. Cal. Nov. 24, 2015) ("The context in which the text message was sent . . . merely highlights the text's purpose of enabling [plaintiff] to complete the registration process that he had initiated minutes before."); *Aderhold v. Car2go N.A., LLC*, No. 13-cv-00489-RAJ, 2014 WL 794802 at *9 (W.D. Wash. Feb. 27, 2014) ("There is no indication that the text was intended for anything other than the limited purpose stated in its two sentences: to permit [plaintiff] to complete registration.").

The Court should find the same here. The allegations in the Complaint make clear that the purpose of the Opt-In Confirmation Messages was not to encourage plaintiff to purchase, rent, or invest in any property, good, or service. To the contrary, it is apparent from Plaintiff's own screenshots that the purpose of the Opt-in Confirmation Messages was to confirm Plaintiff's subscription to receive **subsequent** marketing messages. Compl. ¶ 18 ("Reply Y *to subscribe* to recurring automated personalized marketing alerts…") (emphasis added). While the Opt-In Confirmation Messages provide examples of the types of marketing messages Plaintiff **could** subscribe to by replying "Y," (e.g. cart reminders), there were no products that were promoted in the messages, nor did the messages attempt to incentivize Plaintiff to make any future purchases

20

from TAOS. *Cf. Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (calls that encouraged listeners to make future purchases were advertisements). The non-solicitous purpose of the Opt-In Confirmation Messages is even more apparent when compared to the August 2024 marketing messages that Plaintiff consented to receive before requesting to opt out. *See* Compl. ¶ 14 (offering 20% off certain products). The fact that the Opt-In Confirmation Messages contained a hyperlink to TAOS's Privacy Policy does not convert these non-solicitous messages into marketing. *See Rotberg*, 345 F.Supp.3d at 379–80 (declining to construe an opt-in confirmation message that linked to defendant's terms of use as marketing).

In *Bosley*, this Court held that that plaintiff's allegations that the text messages she received contained "both 'discounts and promotions' with the intent to drive customers to Defendant's business" were sufficient to plausibly allege a "telephone solicitation." 2025 WL 2686984, at *5. The text messages in *Bosley*, however, were not at all like the Opt-in Confirmation Messages. In *Bosley*, the messages promoted upcoming live music shows at defendant's restaurant. *See* Complaint ¶¶ 14, 16, *Bosley*, No. 1:25-cv-22336-BB (May 22, 2025), ECF No. 1. At bottom, the sole purpose of the Opt-In Confirmation Messages was to enable Plaintiff to confirm whether he would like to receive marketing messages in the future, not to encourage the purchase, rental, or investment in any good, product or service. They accordingly are not "telephone solicitations" or "telemarketing" which can form the basis of Plaintiff's DNC Registry, Quiet Hours, and Internal DNC Claims. Plaintiff's Complaint must be dismissed in its entirety.

## V.   **CONCLUSION**

For the reasons set forth above, Defendant The Art of Shaving-FL, LLC respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint in its entirety.

21

Dated: April 13, 2026.

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By: /s/ *Jason Daniel Joffe*
Jason Daniel Joffe
Florida Bar No. 0013564
200 S. Biscayne Blvd., Suite 3400
Miami, FL 33131
Telephone: (305) 577-7000
Facsimile:  (305) 577-7001
Email:jason.joffe@squirepb.com

Kristin L. Bryan *(pro hac vice forthcoming)*
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
E-mail: kristin.bryan@squirepb.com

Shing Tse *(pro hac vice forthcoming)*
1230 Peachtree Street, NE
Suite 2200
Atlanta, GA 30309
Email: shing.tse@squirepb.com
*Attorneys for Defendant The Art of Shaving-FL, LLC*

22

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 13, 2026, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to

all counsel of record that are registered with the Court's CM/ECF system.

*/s/ Jason Daniel Joffe*
Jason Daniel Joffe