**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

KEVIN CONNELLY, individually and on behalf )
of all others similarly situated,           )
                                             )
        *Plaintiff,*                         )        **Case No. 1:26-cv-20843-BLOOM**
                                             )
v.                                           )
                                             )
THE ART OF SHAVING-FL, LLC,                  )
                                             )
        *Defendant*.                         )

**DEFENDANT THE ART OF SHAVING-FL, LLC'S**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT AND**
**MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant The Art of Shaving-FL, LLC ("Defendant" or "TAOS"), by and through its undersigned counsel, hereby moves this Court to dismiss Plaintiff Kevin Connelly's First Amended Class Action Complaint ("FAC").

## I.      INTRODUCTION

Plaintiff alleges that he received five text messages from TAOS in November 2025 asking him to confirm that he would like to opt-in to future marketing messages. From this, Plaintiff now asserts four claims under the Telephone Consumer Protection Act ("TCPA") and one claim under the Connecticut Telephone Solicitation Act ("CTSA"). As established in TAOS's motion to dismiss the original complaint [ECF No. 8], each of Plaintiff's claims fails as a matter of law for multiple reasons. Plaintiff's second bite at the apple, the FAC, added no allegations that could refute these fundamental legal points.

Most basically, Plaintiff's TCPA claims necessarily fail because § 227(c)(5) of the TCPA, which provides a private right of action for violations of the TCPA's implementing regulations, is limited to violative "telephone call[s]"—not text messages. 47 U.S.C. § 227(c)(5). Courts

exercising their duty to independently interpret the TCPA following the Supreme Court's decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)—including district courts in the Eleventh Circuit—have concluded that the term "telephone call" **does not** include text messages. *See, e.g.*, *Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270 (N.D. Fla. 2025) (dismissing Section 227(c)(5) claim premised on receipt of text messages); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (same); *Lopresti v. Nouveau Essentials Marketing LLC*, No. 5:25-cv-00282-CEM-RL, 2026 WL 964758 (M.D. Fla. Feb. 26, 2026) (same); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-02811-TWT, 2026 WL 456919, at *3–5 (N.D. Ga. Feb. 17, 2026) (same); *Radvansky v. Kendo Holdings, Inc., dba Fenty Beauty*, No. 3:23-cv-00214-LMM, 2026 WL 810929, at *2–3 (N.D. Ga. Feb. 12, 2026) (same); *James v. Smarter Contact, Inc.*, No. 8:25-cv-01657-KKM-SPF, 2026 WL 879244, at *5 (M.D. Fla. Mar. 31, 2026) (same); *Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-cv-00242-LMM, 2026 WL 1098403, at *5 (N.D. Ga. Apr. 20, 2026) (same).  Here, because Plaintiff only alleges the receipt of text messages, his claims against TAOS for violations of the TCPA's regulations must be dismissed.

Plaintiff's TCPA claims separately fail as to the opt-in confirmation messages Plaintiff allegedly received in November 2025 because the FAC does not support any plausible inference that those messages are "telephone solicitations" or "telemarketing."  Calls qualify as "telephone solicitations" and "telemarketing" only if their purpose is to encourage the purchase, rental, or investment in any property, goods, or services.  47 U.S.C. § 227(a)(4).  A cursory review of the subject text messages shows that this purpose-oriented test is **not satisfied**, as the texts did not encourage Plaintiff to purchase anything.  Instead, their purpose was solely to enable Plaintiff to reply "Y" to subscribe to receive **subsequent** marketing messages by completing a double opt-in.

2

Indeed, courts have found that similar confirmation messages do not constitute telephone solicitations or telemarketing due to their non-solicitous purpose. *See, e.g., Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F.Supp.3d 466, 480–81 (S.D.N.Y. 2018) (assessing text messages at issue and dismissing complaint for failure to allege purpose requirement satisfied). TAOS submits that the same result should be reached here, and Plaintiff thus cannot satisfy essential elements of his claims asserting violations of 47 C.F.R. §§ 64.1200(c) and (d) based on the opt-in confirmation messages.

Finally, Count V of Plaintiff's FAC is a tacked-on claim under Connecticut state law, specifically the CTSA, Conn. Gen. Stat. § 42-288a(c)(2). This Court should decline to exercise supplemental jurisdiction over a state law claim following dismissals of the federal TCPA claims. *See* 28 U.S.C. § 1367(c). Moreover, the Court should dismiss the state law claim because Conn. Gen. Stat. § 42-288a(c)(2) has not existed since 2023, and thus Plaintiff has no cause of action under that repealed statute.

## II.    **ALLEGATIONS**

Plaintiff seeks to bring a class action against TAOS under the TCPA. Plaintiff alleges that "[b]eginning at least in August 2024," TAOS sent or caused to be sent multiple text messages to his phone number ending in 1456 ("Plaintiff's Number"), which he alleges is his residential number registered on the National Do Not Call Registry ("DNC Registry"). FAC ¶¶ 10, 14, 43–45. Plaintiff alleges that he responded "Stop" on August 30, 2024, after which he received a message from TAOS confirming his opt-out. *Id.* ¶¶ 14–15. Plaintiff does not allege that he responded "Stop" prior to August 30, 2024. The FAC further alleges that, over a year later, on November 3, 2025, Plaintiff received two additional messages from TAOS at 6:25 p.m. and 10:47 p.m., respectively, to which he responded "Stop." *Id.* ¶¶ 16–17. Thereafter, Plaintiff allegedly received two additional messages on the same day at 10:55 p.m. and 11:08 p.m., and then another

3

message at 4:12 a.m. on November 4, 2025. *Id.* ¶ 18. According to screenshots contained in the FAC, all five of the messages Plaintiff allegedly received on November 3 and November 4, 2025 (the "Opt-In Confirmation Messages") read:

> The Art of Shaving: Reply Y to subscribe to recurring automated personalized marketing alerts (e.g., cart reminders) from The Art of Shaving. Msg and data rates may apply. Msg frequency varies. Reply HELP for help, STOP to cancel. Privacy: https://aos.attn.tv/cl/vHm.

*Id.* Plaintiff alleges that "[a]t no point in time did Plaintiff provide Defendant with his prior express written consent to be contacted, before or after opting out." *Id.* ¶ 40. Plaintiff alleges TAOS "does not honor reasonable consumer requests to opt-out of text message solicitations" which "demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant." *Id.* ¶¶ 28–29. Plaintiff asserts four causes of action against TAOS under § 227(c)(5) of the TCPA: **(1)** Violation of 47 C.F.R. § 64.1200(c)(2) (the "DNC Registry Claim"); **(2)** Violation of 47 C.F.R. § 64.1200(d) (the "Internal DNC Claim"); **(3)** Violation of 47 C.F.R. § 64.1200(c)(1) (the "Quiet Hours Claim"); and **(4)** "Knowing and/or Willful Violations of the TCPA." FAC ¶¶ 65–99. Plaintiff asserts a fifth cause action for violation of the CTSA, Conn. Gen. Stat. § 42-288a(c)(2). FAC ¶¶ 59(e), 105, 109. Plaintiff seeks to represent four putative classes. *Id.* ¶¶ 54.

## III.  <u>LEGAL STANDARD</u>

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although factual allegations must generally be taken as true when ruling on a motion to dismiss, a court should not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Mere "labels and conclusions" or "a

4

formulaic recitation of the elements of a cause of action will not do," as a plaintiff is required to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678–79 (same).  A court may also dismiss a claim pursuant to Rule 12(b)(6) "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).  "[W]here a court has dismissed all the federal claims in a complaint, it may decline to exercise supplemental jurisdiction over the state law claims in that complaint pursuant to [28 U.S.C. §] 1367(c)(3)." *Radzinskaia v. NH Mountain, LP*, No. 23-cv-21967-BB, 2023 WL 6376457, at *7 (S.D. Fla. Sept. 29, 2023) (Bloom, J.) (dismissing state claims following dismissal of federal claim).  The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004).

## IV.  ARGUMENT

### A.  Plaintiff Does Not Have a Right of Action Because Section 227(c)(5) of the TCPA Does Not Apply to Text Messages.

Here, each of Plaintiff's TCPA claims fails as a matter of law because § 227(c)(5)—the statutory provision on which the claims rely for a private right of action—**does not** apply to text messages.  Under § 227(c)(5), only "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c)] may . . . bring . . . an action." 47 U.S.C. § 227(c)(5) (emphasis added). Here, Plaintiff's claims are all based on the receipt of *text messages*.  *See* FAC ¶ 3 ("This case arises from Defendant's transmission of multiple unauthorized text messages[.]").  Applying "ordinary principles of statutory interpretation" to the TCPA as directed by the Supreme Court in *McLaughlin*, a text message is not a "telephone call."  *See Davis*, 797 F.Supp.3d at 1272

("[B]ecause a text message is not a 'telephone call,' [plaintiff] has not stated a plausible claim."). Plaintiff therefore has no private right of action under section 227(c)(5), and his claims should be dismissed.

Below, Section IV.A.1 addresses how the ordinary meaning of "telephone call," prior to any specialized canons of construction, does not encompass text messages. As analyzed in Section IV.A.2, this conclusion is further supported by canons of construction flowing from the fact Congress has amended other sections of the TCPA to include text messages, but has left § 227(c)(5) unchanged. Finally, Section IV.A.3 explains how the FCC's order interpreting "telephone call" to include text messages is not entitled to deference, and that cases relying on pre-*McLaughlin* authority deferring to the FCC's interpretation are inapposite.

### 1. The Ordinary Meaning of "Telephone Call" Does Not Encompass Text Messages.

The term "telephone call" does not have a special definition in the TCPA. *See generally* 47 U.S.C. § 227. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Courts "interpret the words of a statute by 'taking their ordinary, contemporary, common meaning' ***at the time Congress enacted the statute***." *Sumpter v. Sec'y of Labor*, 763 F.3d 1292, 1296 (11th Cir. 2014) (quoting *Perrin*, 444 U.S. at 42) (emphasis added); *see also Davis*, 797 F.Supp.3d at 1272 ("Courts must interpret every statute 'in accord with the ordinary public meaning of its terms at the time of its enactment.'"). While the canons of construction are "useful tools to discern that ordinary meaning," "if the text is clear, the analysis begins and ends there." *Davis*, 797 F.Supp.3d at 1272–73.

As numerous courts post-*McLaughlin* have concluded, the ordinary meaning of "telephone call" does not encompass text messages. *See, e.g.*, *id.* at 1273. As Chief Judge Winsor aptly reasoned in *Davis*, "[n]o normal person refers to a text message, or thinks of a text message, as a 'call.'" *Id.* at 1273 ("No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner."). Similarly, the court in *El Sayed* concluded that "in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication[.]" 2025 WL 2997759, at *1 (dismissing § 227(c)(5) claim alleging receipt of text messages). This ordinary meaning would not be different at the time of the TCPA's enactment in 1991, as "[t]ext messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp.3d 894, 899 (C.D. Ill. 2025).

These conclusions necessarily follow from the dictionary definitions of the terms "telephone" and "call" at the time the TCPA was enacted. *See James*, 2026 WL 879244, at *3 (dismissing with prejudice § 227(c)(5) complaint alleging receipt of text messages). The *James* court observed  that multiple contemporary dictionaries defined the noun "call" as "the act of calling on the telephone." *Id*. (citing *inter alia* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 162 (10th ed. 1993)). "Telephone" was defined as "an apparatus, system, or process for transmission of ***sound or speech*** to a distant point" or "an instrument for ***reproducing sounds at a distance***…one in which ***sound is converted*** into electrical impulses for transmission by wire[.]" *Id*. (citing THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1952 (2d ed. 1987); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1211 (10th ed. 1993)) (emphasis in original). "Thus, a text message, which does not use a telephone to reproduce sounds at a distance,

is not included or embraced in the ordinary public meaning of 'telephone call' from 1991." *Id*.; *see also, e.g.*, *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25-cv-01282, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026) ("Under these definitions, 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance.").

This ordinary-meaning interpretation of § 227(c)(5) that "telephone calls involve the use of sounds and a voice" underscores "that text messages do not present the same type of nuisance that phone calls do." *Richards v. Fashion Nova, LLC,* No. 1:25-cv-01145-TWP-MKK, 2026 WL 847568, at *3 (S.D. Ind. Mar. 26, 2026) (dismissing § 227(c)(5) complaint alleging receipt of text messages). For example, "a text message does not require that a person pick up a call, listen to a voice, or tie up their phone's line." *Fashion Nova*, 2026 WL 847568, at *3. For these reasons, courts in the Eleventh Circuit have held that the ordinary meaning of "telephone call" does not encompass text messages. *See Davis*, 797 F.Supp.3d at 1273; *El Sayed*, 2025 WL 2997759, at *2 ("[T]he statutory text here is clear, and a text message is not a 'telephone call.'"); *Kendo Holdings* 2026 WL 810929, at *2 (same); *Irvin*, at *2 (same); *Lopresti*, 2026 WL 964758, at *5 (adopting reasoning of *El Sayed*); *James*, 2026 WL 879244, at *3 ("The ordinary public meaning of 'telephone call' in 1991 did not include or embrace a modern text message."); *1-800-Flowers.com, Inc.*, 2026 WL 456919, at *3 ("[C]ourts in this Circuit that have addressed the issue have [] concluded that the phrase 'telephone call' in § 2[2]7(c)(5) does not include text messages, and this Court will follow suit.").

Courts in other jurisdictions are in accord. *See, e.g.*, *Jones*, 792 F.Supp.3d at 899 ("Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages."); *Stockdale*, 2026 WL 591842, at *3 (holding that plain meaning of "telephone call" under Section

8

227(c)(5) of the TCPA does not include text messages); *Fashion Nova*, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026) ("Because the Court conclude[s] that 'telephone call' under § 227(c)(5) of the TCPA does not include text messages, [plaintiff] fails to state a claim"); *Richards v. Shein Dist. Corp.*, No. 1:25-cv-01385-TWP-TAB, 2026 WL 847584, at *5 (S.D. Ind. Mar. 26, 2026) (same). Because a plain reading of the term "telephone call" does not include text messages, the Court should dismiss Counts I through IV of the FAC. *See, e.g.*, *Davis*, 797 F.Supp.3d at 1275–76 (dismissing Plaintiff's § 227(c)(5) claims premised on the receipt of text messages for failure to state a claim); *El Sayed*, 2025 WL 2997759, at *2 (same).

### 2.  The TCPA's Inclusion of Text Messages in Other Sections Further Supports Excluding Text Messages from Section 227(c)(5).

Interpreting "telephone call" in § 227(c)(5) as excluding text messages is further supported by canons of construction flowing from the fact Congress has used other language in the TCPA, outside of § 227(c)(5), when it wanted to include text messages. Under the meaningful-variation canon and canon against surplusage, when "Congress uses different terms" in different parts of a statute, those terms "hold different meanings, especially when the same meaning would render one of the terms superfluous." *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025). In conjunction with these canons, other provisions of the TCPA confirm that "telephone call" does not include text messages. Section 227(a)(4) defines "telephone solicitation" as "the initiation of a ***telephone call or message***…" 47 U.S.C. § 227(a)(4) (emphasis added). If "telephone call" extended to both telephone calls and text messages, then "or message" in § 227(a)(4) would be superfluous. The fact Congress chose to include "message" in § 227(a)(4) but not § 227(c)(5) confirms its intent to exclude text messages from the scope of § 227(c)(5).

Courts addressing § 227(c)(5) claims post-*McLaughlin* have dismissed the claims after reasoning that § 227(a)(4)'s use of "telephone call or message" demonstrates that "telephone call"

does not encompass text messages. *See, e.g.*, *Davis*, 797 F.Supp.3d at 1274 ("Courts should 'presume that, **when a statute uses one term in one place and a distinct term elsewhere, the difference matters**—that is, the distinct words have different meanings.'") (citation omitted) (emphasis added); *Kendo Holdings*, 2026 WL 810929, at *3 ("Congress's decision to use a different term 'in a neighboring provision only undermines [Plaintiff's] position' because '[i]t shows that Congress does not use the term telephone call to encompass all messages.'"); *Fashion Nova*, 2026 WL 847568, at *3 ("If 'telephone call' already included 'calls and messages,' then the TCPA's definition of 'telephone solicitation' would be redundant.").

Recent statutory history further supports this conclusion. Since enacting the TCPA in 1991, Congress has **twice** amended the statute **to include reference to "text messages"** and both times treated text messages as a distinct action from placing a telephone call. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, sec. 503(a) (codified at 47 U.S.C. §§ 227(e)(8)(A)–(B)) (distinguishing between "a call made using a voice service" and "a text message sent using a text messaging service"); Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, sec. 10(a), 133 Stat. 3274, 3284 (2019) (codified at 47 U.S.C. § 227(i)) (using phrase "a call or text message"). If Congress understood the term "telephone call" to include a text message, it would not have used different terminology when expanding the Act to cover text messages under certain circumstances. *See, e.g.*, 47 U.S.C. § 227(e)(8) (addressing abuse of caller identification services to mask one's identity "in connection with any voice service or text messaging service."); 47 U.S.C. § 227(i) (including reference to "call[s]" and "text message[s].").

As other courts in the Eleventh Circuit observed, "the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood

10

the pertinent distinction and legislated mindful of the distinction." *El Sayed*, 2025 WL 2997759, at *2; *see 1-800-Flowers.com*, 2026 WL 456919, at *3 ("Congress has amended the TCPA as recently as 2019 to add the phrase 'text message' in a neighboring provision, § 227(e)(8)(C), and chose to leave § 227(c)(5) unamended.  This distinction leads the Court to presume that Congress intended § 227(c)(5) to encompass only telephone calls because 'when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" (citation omitted)); *Kendo Holdings*, 2026 WL 810929, at *3 (quoting *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025)) ("Congress has since amended the TCPA and specifically uses the term 'text message' in a neighboring provision," indicating that the term "telephone call" does not include text messages).  If Congress intended § 227(c)(5) of the TCPA to apply to text messages, it twice showed it knew how to do so and chose not to.  *See Fashion Nova*, 2026 WL 847568, at *4 ("The reference to text messages in § 227(e) shows that if Congress had wanted § 227(c) to apply to text messages, it knew how to say so.").  Under canons of construction, the fact Congress did not supports the ordinary meaning interpretation that "telephone call" does not include text messages.

3. **Giving "Appropriate Respect" to the FCC's Interpretation Should Not Change the Statutory Interpretation of "Telephone Call."**

As explained above, using ordinary principles of statutory interpretation, the term "telephone call" in § 227(c)(5) does not encompass text messages.  While another judge of this Court has held that "telephone call" ***does*** include text messages, he expressly reached this conclusion ***without*** applying ordinary principles of statutory interpretation.  *See Piet v. Office Depot, LLC*, No. 9:24-cv-81488-WPD, 2025 WL 4676030, at *3 (S.D. Fla. Nov. 25, 2025) ("[I]nterpreting the TCPA on a blank slate under ordinary principles of statutory interpretation, this Court would tend to agree with the district courts who have determined that a call does not

11

include a text message."); Order at 5 n.2, *Glasel v. Office Depot, LLC*, No. 9:24-cv-80910-WPD (S.D. Fla. Nov. 25, 2025), ECF No. 38 (same); *McGonigle v. Office Depot, LLC*, No. 9:25-cv-80069-WPD (S.D. Fla. Nov. 25, 2025), ECF No. 29 (same).  Instead, Judge Dimitrouleas cited an FCC order from 2003 stating that "[the TCPA] encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *In re Rules & Regs. Implementing the [TCPA]*, 18 F.C.C. Rcd. 14014, 14115, ¶ 165 (2003) ("2003 FCC Order").

Under the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025), the 2003 FCC Order does not displace the ordinary principles of statutory construction.  In *McLaughlin*, the Supreme Court addressed whether district courts were bound by the FCC's interpretations of the TCPA because of a separate statute providing exclusive authority to the court of appeals to determine validity of FCC orders.  606 U.S. at 152 (citing 28 U.S.C. § 2324(1)).  Citing *Loper Bright*, the Court in *McLaughlin* ultimately directed that district courts "should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."  606 U.S. at 168; *see also id.* at 155 ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." (citing *Loper Bright*, 603 U.S. at 402)).  *Loper Bright* makes clear what "appropriate respect" entails for statutory interpretation.  In *Loper Bright*, the Court overruled *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and held that "[c]ourts must exercise their independent judgment" interpreting statutes and the Administrative Procedure Act generally "bars judges from disregarding that responsibility just because an Executive Branch agency views a statute differently."  603 U.S. at 412.  The Court

12

noted that "attention to the judgment of the Executive Branch may help inform that inquiry" of statutory interpretation, *id.* at 413, when that Executive Branch agency's interpretation of the statute "rests on factual premises within [the agency's] expertise," *id.* at 402.

Here, the 2003 FCC Order's interpretation with regards to text messages does not rest on factual premises within the agency's expertise. As one court in this District held with respect to the very issue of whether § 227(c)(5) applies to text messages, "agencies have no special competence in resolving statutory ambiguities." *McGonigle v. Pure Green Franchise Corp.*, No. 0:25-cv-61164-AHS, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026) (staying discovery because "whether § 227(c) includes a cause of action for text messages" is a question of law that does not require discovery and courts have "special competence in resolving statutory ambiguities."). As even the *Piet* court recognized, "the factual premises here—the difference between a call and a text message—is not highly specialized and would not 'give an Executive Branch interpretation particular power to persuade[.]'" *Piet*, 2025 WL 4676030, at *3; Order at 5 n.2, *Glasel*, ECF No. 38 (same), *McGonigle v. Office Depot*, ECF No. 29 (same).

Judge Dimitrouleas's reasoning in the *Office Depot* cases for why "appropriate respect" entailed deference to the 2003 FCC Order is based on (1) the Eleventh Circuit deferring to the FCC under the *Chevron* standard on **other issues** of TCPA interpretation, and (2) the fact that the FCC's interpretation "has been controlling for nearly twenty-five years." 2025 WL 4676030, at *3 ("[T]his Court will continue to follow existing Eleventh Circuit precedent and holds that a text message is a call for the purpose of the TCPA. . . . [A]lthough [the] Eleventh Circuit has not directly addressed whether a 'call' includes a text message under the TCPA. . . ."). But the Court in *Loper Bright* analyzed whether an agency's reasoning had the "power to persuade" not the "power to control." 603 U.S. at 402. And if "appropriate respect" meant that a court could adopt

13

an agency's non-expert determination of what the law means over the normal statutory interpretation simply because the agency's interpretation on other issues has been controlling for a long time, then courts would not be "exercis[ing] their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 412.

For this reason, other courts in this Circuit have held that, under *Loper Bright* and *McLaughlin*, the 2003 FCC Order is not entitled to deference on whether § 227(c)(5) encompasses text messages. *See, e.g.*, *Davis*, 797 F.Supp.3d at 1275 ("One can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text. Thus, even assuming the FCC order clearly defined 'telephone calls' as that term is used in § 227(c)(5), 'appropriate respect' for that conclusion would not require a different outcome here."); *1-800-Flowers.com*, 2026 WL 456919, at *4 ("[T]his delegation did not authorize the FCC to determine that 'telephone call' includes text messages."). Notably, the court in *Piet* recognized the tension between the FCC's interpretation and the plain language of the TCPA, stating that "[h]owever, interpreting the TCPA on a blank slate under ordinary principles of statutory interpretation, **this Court would tend to agree with the district courts who have determined that a call does not include a text message**. *Piet*, 2025 WL 4676030, at *3 n.2 (emphasis added). In other words, but for the court's improper reliance on FCC precedent, it would "tend to agree" that a call does not include a text message under § 227(c)(5).

In two other § 227(c)(5) cases, this Court has stated that "a text message constitutes a 'call' under the TCPA." *Bosley v. A Bradley Hosp. LLC*, No. 1:25-cv-22336-BB, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025); *Taylor v. Cider (US) Holding Ltd.*, No. 25-cv-24496-BB, 2026 WL 91453, at *2 (S.D. Fla. Jan. 13, 2026). In both cases, the issue was uncontested, and thus, the Court's decisions did not substantively engage with the meaning of the statutory term "telephone

call." *Bosley*, 2025 WL 2686984, at *5 ("There is no dispute that Plaintiff has adequately alleged the first two elements for both Counts I and II."); *Taylor*, 2026 WL 91453, at *2 (same); *see also Kendo Holdings*, 2026 WL 810929, at *2 ("[I]n *Bosley*, the court did not substantively address the question because it appears the parties in that case did not dispute whether a text message constitutes a 'call' under the TCPA."). Further, this Court's statements were accompanied by pre-*McLaughlin* cases which deferred to the 2003 FCC Order.[1]  *Bosley*, 2025 WL 2686984, at *5 (citing *Pariseau v. Built USA, LLC*, 619 F.Supp.3d 1203, 1206 (M.D. Fla. 2022)). These decisions did not address the *McLaughlin* and *Loper Bright* inquiry of determining what "appropriate respect" means for the 2003 FCC Order.

In any event, the 2003 FCC Order contains no substantive analysis of statutory interpretation to which this Court should give respect. The 2003 FCC Order summarily stated that "[The TCPA] encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service." 2003 FCC Order, ¶ 165. In Paragraph 165, the only citations are to 47 U.S.C. § 227(b) of the TCPA and 47 C.F.R. § 64.1200(a). Importantly, § 64.1200(a) was promulgated under § 227(b)—which governs restrictions on the use of "any automatic telephone dialing system or an artificial or prerecorded voice"—and not under § 227(c). By tethering its

---

[1] The *Bosley* and *Taylor* statements cite the pre-*McLaughlin* decision in *Eldridge v. Pet Supermarket Inc.*, 446 F.Supp.3d 1063, 1067–68 (S.D. Fla. 2020) and its quote that "[a] text message to a cell phone qualifies as a 'call' under the TCPA." *Bosley*, 2025 WL 2686984, at *5; *Taylor*, 2026 WL 91453, at *2. The parties in *Eldrige* similarly did not dispute whether text messages constitute telephone calls; they disputed Article III standing. *See, e.g.*, 446 F.Supp.3d at 1065. And the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, which *Eldrige* cites, clearly states that the parties did not dispute whether a text message could be a "telephone call." 577 U.S. 153, 156 (2016). Notably, the Supreme Court's later decision in *Facebook, Inc. v. Duguid*, reiterated that it expressly did not resolve the issue of whether text messages constitute phone calls because the parties did not dispute it. 592 U.S. 395, 400 (2021).

definition of "call" to § 64.1200(a), even the FCC made clear that, absent express specification, the term "call" does not encompass a "text message" or "SMS message."  Put differently, the 2003 FCC Order addressed only text messages sent through an autodialer or prerecorded voice system under § 227(b); it did not reach the separate provisions of the TCPA or its regulations at issue here.[2]  The "appropriate respect" due to the 2003 FCC Order cannot displace the better statutory interpretation that "telephone call" in § 227(c)(5) does not encompass text messages.  Because the FAC is based on text messages, rather than "telephone calls," the Court should dismiss Counts I through IV of the FAC for failure to state a claim.  *See, e.g.*, *Davis*, 797 F.Supp.3d at 1275.

B. **The Opt-In Confirmation Messages Are Not "Telephone Solicitations" or "Telemarketing".**

Even if text messages could give rise to a private right of action under § 227(c)(5) of the TCPA, Plaintiff still fails to state a claim based on the Opt-In Confirmation Messages that Plaintiff allegedly received in November 2025 because they are not "telephone solicitations" or "telemarketing."  Section 64.1200(c) on which Plaintiff's DNC Registry Claim and Quiet Hours Claim rests, restricts making a "telephone solicitation" to a residential telephone subscriber who has registered his or her telephone number on the DNC Registry.  47 C.F.R. § 64.1200(c).  Section 64.1200(d) on which Plaintiff's Internal DNC Claim relies similarly prohibits "telemarketing" calls unless the caller has instituted procedures for maintaining an internal DNC list.  47 C.F.R. §

---

[2] Separately, the argument that text messages include telephone calls is undercut by the fact that the FCC itself distinguishes between the two and does not treat the latter as included in the former. The FCC has amended the relevant DNC regulation, Section 64.1200, multiple times.  In those amended sections, the FCC specifies when "calls" include text messages, *e.g.*, 47 C.F.R. § 64.1200(a)(9) ("As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call."), and in other sections the FCC refers to "voice calls" and "text messages" as two distinct concepts, *id.*, § 64.1200(a)(9)(iv) (regulating "voice calls and text messages" for medical providers).  The FCC knows how to distinguish between calls and texts in its regulations and yet has never expressly amended its "telephone solicitation" definition to include text messages, despite amending other sections to include "text messages."

64.1200(d).  Both "telephone solicitation" and "telemarketing" are defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  *Id*. § 64.1200(f)(13), (15). Thus, a call or message must contain content intended to induce the recipient's purchase of property, goods, or services in order to be subject to sections 64.1200(c) or (d) of the TCPA's regulations.  *See, e.g.*, *Vallianos v. Schultz*, No. C19-0464-JCC, 2019 WL 4980649, at *3–4 (W.D. Wash. Oct. 8, 2019) (dismissing plaintiff's claim for unsolicited text messages where message content did not encourage plaintiff to make any purchase); *Williams-Diggins v. Republic Servs.*, No. 3:18-cv-02313, 2019 WL 5394022, at *2 (N.D. Ohio Apr. 25, 2019) (dismissing claim under section 64.1200(c) despite allegation that she was not defendant's customer, because "the purpose of the calls was to inform, not to solicit business . . . .").

The prevailing authority makes clear that whether a call or message qualifies as a solicitation or telemarketing depends on its purpose and intent, as reflected in the plain language of its content.  *See Schulz v. Infogroup, Inc.*, No. 3:19-cv-1620-N, 2020 WL 4201636, at *2–3 (N.D. Tex. July 21, 2020) (dismissing TCPA claim because the calls' purpose was not to encourage plaintiff to purchase any good or service and therefore were not "telemarketing"); *Edelsberg v. Vroom, Inc.*, No. 16-cv-62734, 2018 WL 1509135, at *4–5 (S.D. Fla. Mar. 27, 2018) (considering the purpose of a text message, rather than plaintiff's categorization, in determining whether it was "telemarketing"). "Court[s] evaluate[] the question of whether a message or phone call constitutes a telephone solicitation by looking at the context of the message and by using 'a measure of common sense.'" *Vallianos*, 2019 WL 4980649, at *3.

Accordingly, courts have held calls or messages intended to merely facilitate a recipient's enrollment to receive marketing text messages in the future do not constitute marketing.  *See*

17

*Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F.Supp.3d 466 (S.D.N.Y. 2018). The court in *Rotberg* granted the defendant's motion to dismiss because the plaintiff failed to allege that an "initial marketing text message"—which referred the plaintiff to defendant's webpage that "set[] forth the terms and conditions by which he could consent to receive marketing materials"—constituted telemarketing. *Id*. at 478–79. In so ruling, the court made clear that "a caller seeking out a consumer's [prior] express written consent to send *subsequent* telemarketing or advertising texts is not as a matter of law already engaged in telemarketing." *Id*. at 479 (emphasis in original). Courts similarly find that messages sent in order to complete a registration are likewise not marketing. *An Phan v. Agoda Co. Pte. Ltd*., 351 F.Supp.3d 1257, 1265 (N.D. Cal. 2018) ("[T]his Court holds that the text messages [defendant] sent to [plaintiff] were neither advertising nor telemarketing. . . . [T]hese messages were sent as part of an ongoing business transaction"); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-cv-03546-WHO, 2015 WL 7454260, at *4 (N.D. Cal. Nov. 24, 2015) ("The context in which the text message was sent . . . merely highlights the text's purpose of enabling [plaintiff] to complete the registration process that he had initiated minutes before."); *Aderhold v. Car2go N.A., LLC*, No. 13-cv-00489-RAJ, 2014 WL 794802 at *9 (W.D. Wash. Feb. 27, 2014) ("There is no indication that the text was intended for anything other than the limited purpose stated in its two sentences: to permit [plaintiff] to complete registration.").

The Court should find the same here. The allegations in the FAC make clear that the purpose of the Opt-In Confirmation Messages was not to encourage Plaintiff to purchase, rent, or invest in any property, good, or service. To the contrary, it is apparent from Plaintiff's own screenshots that the purpose of the Opt-in Confirmation Messages was to confirm Plaintiff's subscription to receive *subsequent* marketing messages. FAC ¶ 18 ("Reply Y *to subscribe* to recurring automated personalized marketing alerts…") (emphasis added). While the Opt-In

18

Confirmation Messages provide examples of the types of marketing messages Plaintiff **could** subscribe to by replying "Y," (e.g. cart reminders), there were no products that were promoted in the messages, nor did the messages attempt to incentivize Plaintiff to make any future purchases from TAOS. *Cf. Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (calls that encouraged listeners to make future purchases were advertisements). The fact that the Opt-In Confirmation Messages contained a hyperlink to TAOS's Privacy Policy does not convert these non-solicitous messages into marketing. *See Rotberg*, 345 F.Supp.3d at 379–80 (declining to construe an opt-in confirmation message that linked to defendant's terms of use as marketing). Like the text messages in *Daniel* and *Aderhold*, the Opt-in Confirmation Messages are part of the consumer completing a registration process and thus not marketing that can give rise to a TCPA claim. *See Daniel*, 2015 WL 7454260, at *4 (granting motion to dismiss); *Aderhold*, 2014 WL 794802, at *9 (granting motion for judgment on the pleadings).

In *Bosley*, this Court held that that plaintiff's allegations that the text messages she received contained "both 'discounts and promotions' with the intent to drive customers to Defendant's business" were sufficient to plausibly allege a "telephone solicitation." 2025 WL 2686984, at *5. The text messages in *Bosley*, however, were not at all like the Opt-in Confirmation Messages. In *Bosley*, the messages promoted upcoming live music shows at defendant's restaurant. *See* Complaint ¶¶ 14, 16, *Bosley*, No. 1:25-cv-22336-BB (May 22, 2025), ECF No. 1. At bottom, the sole purpose of the Opt-In Confirmation Messages was to enable Plaintiff to confirm whether he would like to receive marketing messages in the future, not to encourage the purchase, rental, or investment in any good, product or service. They accordingly are not "telephone solicitations" or "telemarketing" which can form the basis of Plaintiff's DNC Registry, Quiet Hours, and Internal DNC Claims. Plaintiff's TCPA claims must be dismissed as to the Opt-In Confirmation Messages.

## C.     The Court Should Dismiss Count V for Multiple Sufficient Reasons.

For the reasons *supra*, Plaintiff's federal claims should be dismissed with prejudice.  In the event that Plaintiff's Count V is the only claim remaining, the Court should decline to exercise supplemental jurisdiction over that state law claim.  *See, e.g.*, *Radzinskaia v. NH Mountain, LP*, No. 23-cv-21967-BB, 2023 WL 6376457, at *7 (S.D. Fla. Sept. 29, 2023) (Bloom, J.) (dismissing state claims following dismissal of federal claim); *Jackson v. RKW Residential*, No. 24-cv-23962-BB, 2025 WL 357795, at *3 (S.D. Fla. Jan. 30, 2025) (Bloom, J.) (same).

Count V should be dismissed for the independently sufficient reason that Plaintiff's claim is brought under a defunct provision.  Plaintiff alleges that TAOS "violated CT Gen Stat § 42-288a(c)(2) by making or causing to be made unsolicited telephonic sales calls to Plaintiff and members of the CTSA Class," and that § 42-288a(c)(2) provides "[n]o telephone solicitor may make or cause to be made any unsolicited telephonic sales call to any consumer . . .for text or media messages, to be received on the consumer's mobile telephone or mobile electronic device at any time."  FAC ¶¶ 104–105; *see also id.* ¶¶ 59(e), 109 (alleging violations of § 42-288a(c)(2)).  But the Connecticut prohibition regarding "unsolicited telephone calls" in former § 42-288a(c)(2) was repealed, effective October 1, 2023.  *See* 2023 Conn. Legis. Serv. P.A. 23-98 (S.B. 1058) (West).  Plaintiff thus cannot assert a § 42-288a(c)(2) claim for texts received after October 1, 2023.  *See, e.g.*, *People's Bank v. Perkins*, No. CV 310482, 1994 WL 621969, at *4 (Conn. Super. Ct. Nov. 3, 1994) (striking claim asserted under repealed statute); *Town of Cheshire v. State Dep't of Correction*, No. HHDCV126033159S, 2017 WL 6997266, at *11 (Conn. Super. Ct. Dec. 12, 2017) (denying injunctive relief "[b]ecause the only statute upon which [plaintiff's] injunctive relief is sought was repealed" prior to plaintiff filing suit and the cause of action accruing).  And regardless, the current version of the CTSA (like the TCPA) defines an actionable "marketing or sales solicitation" as a communication made "to encourage the purchase or rental of, or investment

20

in, property, goods, services or anything of value." Conn. Gen. Stat. § 42-284(9).  For the same reasons discussed *supra* Section IV.B, the Opt-In Confirmation Messages do not encourage any purchase: they merely facilitate a recipient's enrollment to receive marketing text messages in the future.  Thus Plaintiff's CTSA claim should be dismissed with prejudice on this independent basis.

## V.      CONCLUSION

For the reasons set forth above, Defendant The Art of Shaving-FL, LLC respectfully requests that the Court grant this Motion and dismiss Plaintiff's FAC in its entirety.

Dated: May 19, 2026

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Jason Daniel Joffe*
Jason Daniel Joffe
Florida Bar No. 0013564
200 S. Biscayne Blvd., Suite 3400
Miami, FL 33131
Telephone: (305) 577-7000
Facsimile: (305) 577-7001
Email:jason.joffe@squirepb.com

Kristin L. Bryan *(pro hac vice)*
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
E-mail: kristin.bryan@squirepb.com

Shing Tse *(pro hac vice)*
1230 Peachtree Street, NE
Suite 2200
Atlanta, GA 30309
Email: shing.tse@squirepb.com
*Attorneys for Defendant The Art of Shaving-FL, LLC*

22

23

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 19, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

*/s/ Jason Daniel Joffe*
Jason Daniel Joffe
