**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

KEVIN CONNELLY, individually and on behalf of
all others similarly situated,

    *Plaintiff*,

vs.

THE ART OF SHAVING -FL, LLC.,

    *Defendant*.

_____/

**CLASS ACTION**

**Case No. 1:2026-cv-20843**

**JURY TRIAL DEMANDED**

## SECOND AMENDED CLASS ACTION COMPLAINT

1.    Plaintiff, Kevin Connelly ("Plaintiff"), brings this action against Defendant, The Art of Shaving - FL, LLC, ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 and the Connecticut Telephone Solicitation Act ("CTSA"), CT Gen Stat § 42-288a.

## NATURE OF THE ACTION

2.    This is a class action under 47 U.S.C. § 227 *et seq.*, the TCPA and CT Gen Stat § 42-288a, the CTSA, *et seq*.

3.    This case arises from Defendant's transmission of multiple unauthorized text messages to cellular telephones in violation of multiple provisions of TCPA and CTSA, without regard to consumers' consent or privacy rights, even after consumers opt out from Defendant's messages.

4.    Defendant is a retail, shaving and cosmetics business, based out of Florida, that provides shaving and skin care accessories to consumers across the United States.

5.      To promote its goods and services, Defendant engages in aggressive telephonic sales call campaigns to consumers with no regards for consumers' rights under the TCPA and CTSA, even after customers opt out from Defendant's messages.

6.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of himself and members of the classes, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is headquartered in this District, Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services from within this district thereby establishing

sufficient contacts to subject it to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred from within the Southern District of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals from within this judicial district, such that some of Defendant's acts in making such calls have occurred from within this district, subjecting Defendant to jurisdiction in the Southern District of Florida.

## PARTIES

9.      Plaintiff is a natural person and consumer who, at all times relevant to this action, was a resident of Fairfield County, Connecticut.

10.      Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 1456 (the "1456 Number") that received Defendant's text message solicitations.

11.      Defendant is a Florida company with its principal place of business at 1301 NW 84th Avenue, Suite 101, Miami, FL 33126.

12.      Defendant directs, markets, and provides its business activities throughout the United States.

13.      Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

14.      Beginning at least in August 2024, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's 1456 Number, from Defendant's short-form telephone number 46374, as shown below:



15.     On August 30, 2024, Plaintiff responded with the clear and unambiguous opt-out message "STOP" to Defendant's 46374 short-form telephone number. Defendant immediately confirmed receipt of Plaintiff's opt-out request, responding: "You are unsubscribed from messaging. No more messages will be sent." (As shown above.)

16.     On November 3, 2025, at 10:47 PM, Defendant sent a text message to Plaintiff's 1456 Number in direct violation of federal after-hours restrictions, which prohibit telemarketing communications before 8:00 AM and after 9:00 PM local time. Defendant continued its aggressive

campaign with additional messages on November 3, 2025, sending two separate text messages to Plaintiff's 1456 Number on the same day (As shown below):



17.     On Novemb[...]quest by responding with the clear and unambiguous opt-out message "Stop" to Defendant's 46374 short-form telephone number. Defendant immediately confirmed again the receipt of Plaintiff's second opt-out request, responding: "You are unsubscribed from messaging. No more messages will be sent." (As shown above)

18.     Despite Plaintiff's unequivocal opt-out requests and Defendant's own confirmations, Defendant deliberately continued its unwanted solicitations, as shown below:



including five deliberate after-hours intrusions—demonstrates Defendant's complete failure to maintain any functional internal do-not-call procedures and its deliberate choice to ignore consumer opt-out requests over an extended period.

20. The telemarketing messages Plaintiff received originated from short-form telephone number 46374, a telephone number owned and/or operated by or on behalf of Defendant.

21. Defendant´s text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

22. Defendant's text messages constitute telemarketing because they (a) encouraged the future purchase or investment in Defendant's property, goods, or services, i.e., shaving and skin care accessories and (b) encouraged Plaintiff to opt in to future marketing alerts.

23. The information contained in the text message advertises Defendant's various promotions, which Defendant sends to promote its business.

24. Defendant's text messages constitute "telephonic sales calls" as defined by CT Gen Stat § 42-284(18) because they were text messages sent to Plaintiff, a natural person who resides in Connecticut, for the purpose of engaging in a marketing or sales solicitation and obtaining information that will or may be used for marketing or sales solicitation. More specifically, Defendant sent these text messages to Plaintiff to solicit him to make purchases from Defendant and to obtain his consent for continued marketing communications, ultimately soliciting his purchase of shaving products and accessories.

25. Defendant sent the subject texts from within this judicial district and, therefore, Defendant's violation of the TCPA occurred from within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

26. Defendant has the capability of immediately complying with Plaintiff's opt-out requests.

27. As demonstrated by the above facts, Defendant does not honor reasonable consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's

telephone solicitations by sending a clear "Stop" message, received confirmation of unsubscription, but Defendant continued to text message Plaintiff using a different telephone number, intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

28.   Defendant´s refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

29.    Defendant´s refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

30.   Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's "Stop" opt-out instructions.

31.   Defendant´s refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

32.   Defendant´s refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain an internal do-not-call list.

33.   Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made multple opt-out requests and those requests were never processed; it was ignored by Defendant and its employees and Defendant continued to send text messages after August 30, 2024.

34.   These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt-out of future communications are honored within a reasonable time.

35.   Indeed, Plaintiff's and the class members' opt-out requests were not honored within a reasonable time from when the opt-out request was made.

36.     Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

37.     Upon information and belief, Defendant does not inform and train its personnel engaged in telemarking in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

38.     Defendant´s texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

39.     At no point in time did Plaintiff provide Defendant with his express written consent to be contacted, before or after opting out.

40.     Specifically Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages, either before or after opting out.

41.     To the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes, that consent was expressly revoked on August 30, 2024, when Plaintiff sent the "Stop" message and received confirmation of unsubscription.

42.     Plaintiff is the subscriber and sole user of the 1456 Number and is financially responsible for phone service to the 1456 Number.

43.     Plaintiff's 1456 Number is his residential telephone number used for personal purposes. Plaintiff's 1456 Number is his primary way of being contacted in his home.

44.     Plaintiff registered his 1456 Number with the national do-not-call registry on January 31, 2019 and has been registered at all times relevant to this action.

45.     The TCPA´s implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has

9

registered him or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46.     The CTSA, CT Gen Stat § 42-288a(b), provides that "[a]ny violation of the provisions of 47 USC 227, 16 CFR 310 or 47 CFR 64.1200, as amended from time to time, which provide that a telemarketer shall not call a consumer whose name and telephone number appear on the National Do Not Call Registry or who has specifically requested not to receive calls from a particular entity, shall constitute a violation of sections 42-284 to 42-288b, inclusive."

47.      Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

48.     On information and belief, Defendant sought a financial benefit from the telemarketing text messages it placed to Plaintiff and the putative class members, as it attempted to derive business from these messages.

49.     Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

50.     Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

51.     Next, Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages. In all, Defendant's violations of the

TCPA and CTSA caused Plaintiff to waste at least fifteen minutes of his time in addressing and attempting to stop Defendant's solicitations. Additionally, the deliberate nature of Defendant's violations, continuing to send messages after express confirmation of removal, caused Plaintiff significant additional time loss and frustration.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

52.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

53.     Plaintiff brings this case on behalf of the following "Classes" defined as follows:

**Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

**National Internal Do Not Call Class: From four years before the filing of the Complaint, all persons in the United States who (1) were sent more than one text message by or on behalf of Defendant within any 12-month period; (2) regarding Defendant's goods or services, to said person's cellular telephone number; and (3) while Defendant did not maintain the required procedures under 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive such calls**

**After-Hours Violation Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf between the hours of 9:00 PM and 8:00**

**AM in the recipient's local time zone, in violation of 47 C.F.R. § 64.1200(c)(1).**

**CTSA Class: All residents of Connecticut, who from the applicable statute of limitations period prior to the filing of this action through the date of class certification were sent an unsolicited telephonic sales call by or on behalf of Defendant.**

54.     Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each Class but believes the Class members number in the several thousands, if not more.

55.     Also excluded from the Classes are persons who, after making a request to Defendant to not receive future text messages, subsequently affirmatively opted-in to receive text messages from Defendant.

## NUMEROSITY

56.     Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout the United States without their prior express written consent and/or after they had requested to opt-out. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

57.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records.

## COMMON QUESTIONS OF LAW AND FACT

58.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

    a.  Whether Defendant initiated telephone solicitations to Plaintiff and the Class members;

b.   Whether Defendant violated 47 C.F.R. § 64.1200(c) by sending text messages to numbers on the Do Not Call Registry;

c.   Whether Defendant violated 47 C.F.R. § 64.1200(d);

d.   Whether Defendant violated 47 C.F.R. § 64.1200(c)(1) by sending text messages during prohibited after-hours times;

e.   Whether Defendant violated CT Gen Stat § 42-288a(b);

f.   Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;

g.   Whether Defendant keeps records of text recipients who revoked consent to receive texts;

h.   Whether Defendant's conduct was knowing and willful;

i.   Whether Defendant is liable for damages, and the amount of such damages;

j.   Whether Plaintiff and the CTSA class members are entitled to their reasonable attorney's fees and costs; and

k.   Whether Defendant should be enjoined from such conduct in the future.

59.   The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telephone solicitations and telemarketing messages to consumers after they had requested to be opted out, during prohibits after hours times, and/or while they were registered on the DNC Registry and at times prohibited by law, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

60.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

61.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

### SUPERIORITY

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

63.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

64. Plaintiff repeats and realleges the paragraphs 1 through 63 of this Complaint and incorporates them by reference herein.

65. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

66. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

67. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

68. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

69. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

70.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone solicitation in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

71.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## COUNT II
## <u>VIOLATION OF 47 U.S.C. § 227(c)(2)</u>
### (Individually and on behalf of the National Internal Do Not Call Class)

72.     Plaintiff re-alleges and incorporates paragraphs 1 through 63 as if fully set forth herein.

73.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

74.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or

on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 .F.R. § 64.1200(d)(3), (6).

75.     Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

C.F.R. § 64.1200(e).

76.     Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive telemarketing messages from Defendant.

77.     Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

78.     Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing messages made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

79.     Because Plaintiff and the Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

80.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

81.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

82.     Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

83.     Plaintiff and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT III**
**VIOLATION OF 47 U.S.C. § 227(c)(1)**
**(Individually and on behalf of Plaintiff and the After-Hours Violation Class)**

84.     Plaintiff re-alleges and incorporates paragraphs 1 through 63 as if fully set forth herein.

85.     47 C.F.R. § 64.1200(c)(1) provides that "[n]o person or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)."

18

86.     47 C.F.R. § 64.1200(e) provides the rules set forth in 47 C.F.R. § 64.1200(c) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

87.     Any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

88.     Defendant violated 47 C.F.R. § 64.1200(c)(1) by initiating, or causing to be initiated, telephone solicitations to Plaintiff and the After-Hours Violation Class members during prohibited after-hours times.

89.     Defendant violated 47 U.S.C. § 227(c) because Plaintiff and the After-Hours Violation Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(c)(1), as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the After-Hours Violation Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200(c)(1).

90.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the After-Hours Violation Class.

## COUNT IV
### Knowing and/or Willful Violations of the TCPA
### (On Behalf of Plaintiff and the Classes)

91.     Plaintiff re-allege and incorporates paragraphs 1-63 as if fully set forth herein.

92.     At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

93.     Defendant knew that it did not have prior express consent to transmit telemarketing text messages and knew or should have known that its conduct was a violation of the TCPA.

94.     Defendant knew or should have known that Plaintiff's number was on the National Do Not Call Registry and that sending text messages to such numbers violated federal regulations.

95.     Defendant knew or should have known that sending text messages during prohibited after-hours times (before 8:00 AM and after 9:00 PM) violated 47 C.F.R. § 64.1200(c)(1).

96.     Defendant knew or should have known that continuing to send telemarketing text messages after receiving the request from Plaintiff not to receive telemarketing messages violated 47 C.F.R. § 64.1200(d) and related TCPA provisions requiring entities to maintain internal do-not-call procedures.

97.     Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its telemarketing text messages and that his number was on the National Do Not Call Registry, that messages were being sent during prohibited after-hours times, and that opt-out requests were being ignored, the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA and § 227(c)(5) of the TCPA.

98.     As a result of Defendant's violations, Plaintiffs and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5).

## COUNT V
## Violations of the CTSA
### (On Behalf of Plaintiff and the CTSA Class)

99.     Plaintiff re-allege and incorporates paragraphs 1-63 as if fully set forth herein.

100.    CT Gen Stat § 42-284(18)(A) defines a "telephonic sales call" as " . . .a telephone call made to a resident consumer or a telephone number with a Connecticut area code by or on behalf of a telemarketer, including, but not limited to, a telephone call made by way of a live voice, an automated dialing system, a recorded message device, soundboard technology, over-the-top messaging or text or media messaging, for the purpose of (i) engaging in a marketing or sales solicitation, (ii) soliciting an extension of credit for consumer goods or services, (iii) obtaining information that will or may be used for a marketing or sales solicitation or an exchange or extension of credit for consumer goods or services, (iv) encouraging such resident consumer to share any personally identifying information or purchase or invest in any property, goods, services or other thing of value if such resident consumer did not previously express any interest in sharing such personally identifying information or purchasing or investing in such property, goods, services or other thing of value, or (v) soliciting such resident consumer to donate any money, property, goods, services or other thing of value if such resident consumer did not previously express any interest in donating such money, property, goods, services or other thing of value."

101.    Defendant's text messages to Plaintiff and members of the CTSA Class constitute "telephonic sales calls" under the CTSA because they were text messages sent to Connecticut residents, for the purpose of engaging in a marketing or sales solicitation (i.e. shaving, skin care

21

accessories and encouraging consumers to opt into future marketing alerts) and obtaining information that will or may be used for marketing or sales solicitation (i.e. obtaining consent for future marketing alerts).

102. CT Gen Stat § 42-288a(b) provides that "[a]ny violation of the provisions of 47 USC 227, 16 CFR 310 or 47 CFR 64.1200, as amended from time to time, which provide that a telemarketer shall not call a consumer whose name and telephone number appear on the National Do Not Call Registry or who has specifically requested not to receive calls from a particular entity, shall constitute a violation of sections 42-284 to 42-288b, inclusive."

103. Defendant violated CT Gen Stat § 42-288a(b) by making or causing to be made telephonic sales calls to Plaintiff and members of the CTSA Class while (1) their numbers were listed in the National Do Not Call Registry and (2) sending telemarketing messages to Plaintiff and members of the CTSA Class without having instituted procedures for maintaining a list of persons who request not to receive such calls pursuant to CFR 64.1200(d).

104. CT Gen Stat § 42-288a(g) provides that if a consumer informs a telemarketer at any point during a telephonic sales call that the consumer does not wish to receive future telephonic sales calls or wishes to be removed from such person's list, the telemarketer shall, among other things, "refrain from making any additional telephonic sales calls to such consumer at any telephone number associated with such consumer." CT Gen Stat § 42-288a(g)(3).

105. Plaintiff informed Defendant on August 30, 2024, and again on November 3, 2025, that Plaintiff did not wish to receive future telephonic sales calls by responding "Stop" to Defendant's text messages. Defendant confirmed on each occasion that Plaintiff had been unsubscribed and would no longer receive messages. Despite these confirmations, Defendant continued to send telephonic sales calls to Plaintiff in violation of CT Gen Stat § 42-288a(g)(3).

106. CT Gen Stat § 42-288a(c) provides that a telephonic sales call that is not otherwise prohibited shall be limited to being conducted between the hours of nine o'clock a.m. and eight o'clock p.m. local time.  Defendant violated CT Gen Stat § 42-288a(c) by sending a telephonic sales call to Plaintiff at 10:47 p.m. on November 3, 2025, outside the hours permitted under the CTSA.

107. CT Gen Stat § 42-288a(l) provides that "[n]o telemarketer may make, or cause to be made, a telephonic sales call to a consumer without such consumer's prior express written consent."

108. Defendant violated CT Gen Stat § 42-288a(l) by making or causing to be made unsolicited telephonic sales calls to Plaintiff and members of the CTSA Class without having first obtained their prior express written consent.

109. CT Gen Stat § 42-288a(k) provides that "[a] violation of any of the provisions of this section shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b."

110. CT Gen Stat § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

111. CT Gen Stat § 42-110g provides Plaintiff and members of the CTSA Class with a private right of action to recover actual damages, costs and reasonable attorney's fees "as a result of the use or employment of a method, act or practice prohibited by section 42-110b [.]" *See* CT Gen Stat § 42-110g(a), (d).

112. As a result of Defendant's violations of CT Gen Stat § 42-288a(b), (c), (g)(3), and (l), Plaintiff and members of the CTSA Class are entitled to recover actual damages, costs and their reasonable attorney's fees, pursuant to CT Gen Stat § 42-110g.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a. An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227.

c. A declaration that Defendant's practices described herein violate the CTSA;

d. An injunction prohibiting Defendant from sending text messages during prohibited after-hours times in violation of 47 C.F.R. § 64.1200(c)(1).

e. An injunction requiring Defendant to implement and maintain proper internal do-not-call procedures in compliance with 47 C.F.R. § 64.1200(d);

f. An injunction requiring Defendant to cease all text message solicitations to numbers on the Do Not Call Registry, and to otherwise protect the interests of the Classes;

g. An award of actual and statutory damages for Plaintiff and each member of the Classes;

h. An award of reasonable attorneys' fees and court costs pursuant to CT Gen Stat § 42-110g;

i. Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Classes, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the text messages as alleged herein.

Dated: May 21, 2026

Respectfully Submitted,

**Shamis & Gentile, P.A.**
*/s/ Christopher Berman*
Christopher Berman, Esq.
Florida Bar No. 1010654
cberman@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

**EDELSBERG LAW P.A.**
*/s/ Scott Edelsberg*
Scott Edelsberg, Esq.
Florida Bar No. 0100537
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Classes*