IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KEVIN CONNELLY, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

THE ART OF SHAVING-FL, LLC,

Defendant.

Case No. 1:26-cv-20843-BLOOM

Honorable Beth Bloom

PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO STAY
DISCOVERY AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Kevin Connelly ("Plaintiff"), hereby files his Response in Opposition to Defendant The Art of Shaving-FL, LLC's ("TAOS" or "Defendant") Renewed Motion to Stay Discovery [ECF No. 29] ("Mot."), and in support thereof, states as follows:

I.        INTRODUCTION

"All defendants believe that their motions to dismiss are meritorious, and if that was the standard, discovery would be stayed in all cases where motions to dismiss are filed." *Cortazar v. Ca Ventures, LLC*, No. 1:19-cv-22075-UU, 2019 U.S. Dist. LEXIS 126556, at *3 (S.D. Fla. July 29, 2019) (Ungaro, J.) (denying motion to stay pending resolution of defendant's motion to dismiss) (quoting *Eisenband v. Starion Energy, Inc.*, No. 17-80195-CIV-MARRA, 2017 U.S. Dist. LEXIS 97811, at *3 (S.D. Fla. June 16, 2017) (Marra, J.)).

Here, Defendant seeks to stay discovery pending the resolution of its unmeritorious Motion to Dismiss the Second Amended Complaint, ECF No. 28 ("MTD"), which asserts **an argument that has been rejected by the Ninth Circuit, the overwhelming majority of district courts, and**

1

***this very Court on at least two separate occasions***– that text messages are not actionable under the Telephone Consumer Protection Act ("TCPA"). *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026) (holding, post-*Loper Bright* and post-*Chevron*, that "a 'text message' constitutes a 'call' within the meaning of the TCPA"); *Bosley v. A Bradley Hospitality LLC*, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) (Bloom, J.) (holding that a text message constitutes a call under the TCPA); *Taylor v. Cider (US) Holding Ltd.*, 2026 WL 91453, at *2 (S.D. Fla. Jan. 13, 2026) (Bloom, J.) (same); *Piet v. Office Depot, LLC*, 2025 U.S. Dist. LEXIS 230981 (S.D. Fla. Nov. 24, 2025) (Dimitrouleas, J.) (holding that a text message is a call for the purpose of the TCPA and affording appropriate respect to the FCC's interpretation which has been controlling for nearly twenty-five years); *Glasel v. Office Depot, LLC*, 2025 U.S. Dist. LEXIS 231053 (S.D. Fla. Nov. 25, 2025) (same).

Defendant's MTD relies on a handful of outlier decisions concentrated in a small number of courts, while ignoring that the Ninth Circuit — the only circuit court to address this question post-*McLaughlin* — has squarely held that texts are calls under the TCPA. *See Howard*, 164 F.4th at 1124. In this Renewed Motion to Stay — its *third* attempt to halt discovery — Defendant now asks this Court to shield it from complying with its discovery obligations, based on the sole premise that it believes the TCPA no longer covers text messages, despite decades of case law and regulations holding the opposite. TAOS's position is particularly untenable given that this Court has already addressed this issue and reached the opposite conclusion — *twice*.

In this case, Defendant elected to send unsolicited telemarketing text messages to Plaintiff and a nationwide class of consumers without their consent, in alleged violation of the TCPA, 47 U.S.C. § 227(c)(5). After Plaintiff opted out on August 30, 2024, and received confirmation that "[n]o more messages will be sent," Defendant bombarded him with five additional messages —

including messages sent at 10:47 PM, 10:55 PM, 11:08 PM, and 4:12 AM — all for the purpose of re-enrolling Plaintiff in a marketing program he had already rejected. SAC ¶¶ 15–18. Having done so, TAOS now asks this Court to reward that conduct by shielding it from the very discovery necessary to hold it accountable. The Motion should be denied.

A stay of discovery is a rare and extraordinary remedy — not a procedural convenience available to any defendant who files a motion to dismiss. To obtain one, Defendant must demonstrate not merely that its MTD is meritorious, but that unusual circumstances exist and that it will suffer specific, concrete prejudice absent a stay. The burden rests squarely on the party seeking a stay to demonstrate good cause and reasonableness. *Affordable Bio Feedstock Inc. v. United States*, No. 6:18-cv-2129-Orl-37TBS, 2019 U.S. Dist. LEXIS 104717, at *2 (M.D. Fla. June 24, 2019). Defendant cannot make that showing.

TAOS's Renewed Motion to Stay rests on some of the same arguments this Court has seen before — that Section 227(c)(5) does not apply to text messages, that the post-stop messages are not "telephone solicitations," and that the CTSA claim fails. Each of these arguments is contradicted by the overwhelming weight of judicial authority, including decisions from this very Court, the Ninth Circuit, and the Supreme Court. Its invocation of class-wide discovery burdens as "additional good cause" is nothing more than an attempt to weaponize the scale of its own alleged misconduct. And TAOS's suggestion that Plaintiff has "abandoned" prior complaints ignores the reality that Plaintiff's amendments corrected a minor citation error and did not alter the substance of his claims. The law weighs decisively in Plaintiff's favor, and a stay would serve no purpose but to delay justice, waste judicial resources, and prejudice Plaintiff and the putative class. Defendant's Renewed Motion to Stay Discovery should be denied in its entirety.

## II.        LEGAL STANDARD

Motions to stay discovery are disfavored in this Circuit; "there is no general rule that discovery be stayed while a pending motion to dismiss is resolved." *Irizarry v. Orlando Utils. Comm'n*, No. 6:19-cv-268-Orl-37TBS, 2019 U.S. Dist. LEXIS 85260, at *7 (M.D. Fla. May 21, 2019) (citing *Reilly v. Amy's Kitchen, Inc.,* No. 13-21525-CIV, 2013 U.S. Dist. LEXIS 109035, 2013 WL 3929709, at *1 (S.D. Fla. July 31, 2013); *Simpson v. Specialty Retail Concepts, Inc.,* 121 F.R.D. 261, 263 (M.D.N.C. 1988) ("Such motions are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.")).

In deciding whether to grant a stay, a court:

> [M]ust balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery. This involves weighing the likely costs and burdens of proceeding with discovery. It may be helpful to take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted.

*Affordable Bio Feedstock Inc.*, 2019 U.S. Dist. LEXIS 104717, at *3 (M.D. Fla. June 24, 2019) (citing *Simpson*, 121 F.R.D. at 263; *Koock v. Sugar & Felsenthal, LLP*, No. 8:09-cv-609-T-17EAJ, 2009 U.S. Dist. LEXIS 81153, at *2 (M.D. Fla. Aug. 19, 2009) ("In deciding whether to stay discovery pending resolution of a motion to dismiss ... the court must take a 'preliminary peek' at the merits of the dispositive motion to see if it 'appears to be clearly meritorious and truly case dispositive.'"); *see also Schreiber v. Kite King's Lake*, *Ltd. Liab. Co.*, No. 2:10-cv-391-FtM-29DNF, 2010 U.S. Dist. LEXIS 110120, at *2 (M.D. Fla. Oct. 1, 2010) (same).

Here, Defendant has not met its burden to demonstrate that the costs and burdens of proceeding with discovery outweigh the harm of a delay. Nor can Defendant demonstrate an immediate and clear possibility that its MTD will be granted — particularly given that this Court

4

has already rejected Defendant's central argument twice, and the only circuit court to address the issue post-*McLaughlin* has rejected it as well.

### III.      ARGUMENT

**A. There Is No General Rule That Discovery Must Be Stayed Pending a Motion to Dismiss, and *Chudasama* Does Not Establish One.**

"Ordinarily, . . . 'the pendency of a motion to dismiss or a motion for summary judgment will not justify a unilateral motion to stay discovery pending resolution of the dispositive motion.'" *United States v. Physician Surgical Network, Inc.*, No. 6:20-CV-1582-WWB-EJK, 2022 WL 6163122, at *1 (M.D. Fla. Oct. 7, 2022). Here, Defendant contends that engaging in discovery will impose "unnecessary costs," "undue burden and prejudice," but otherwise fails to articulate any particular burden that engaging in the discovery process would impose. *See generally* Mot.

Contrary to Defendant's assertion (and misapplication of *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)), there is no general rule in the Eleventh Circuit that facial challenges to the legal sufficiency of a claim must be resolved before discovery begins.

*Chudasama* does not establish a general rule requiring a stay of discovery whenever a motion to dismiss is pending. "Various courts have recognized that *Chudasama* does not stand for the broad proposition that a court must stay discovery when there is a pending motion to dismiss." *Romacorp, Inc. v. Prescient, Inc.*, No. 10-cv-22872, 2011 WL 2312563, at *2 (S.D. Fla. June 8, 2011). The holding in *Chudasama* "does not establish the general rule that discovery should not proceed while a motion to dismiss is pending." *Koock v. Sugar & Felsenthal, LLP*, No. 8:09-cv-609-EAK-EAJ, 2009 U.S. Dist. LEXIS 81153, at *2 (M.D. Fla. Aug. 19, 2009). *Chudasama* "does not state a general rule that discovery should be stayed pending resolution of a dispositive motion." *HNA LH OD, LLC v. Local House Int'l, Inc.*, No. 21-cv-21022, 2021 U.S. Dist. LEXIS 124101, at *3 (S.D. Fla. July 1, 2021). And "[t]he Eleventh Circuit did not, however, prescribe 'a broad

rule that discovery should be deferred whenever there is a pending motion to dismiss.'" *Ray v. Spirit Airlines, Inc.*, No. 12-cv-61528, 2012 WL 5471793, at *2 (S.D. Fla. Nov. 9, 2012); *Gannon v. Flood*, 2008 WL 793682, at *1 (S.D. Fla. Mar. 24, 2008) ("This does not indicate a broad rule that discovery should be deferred whenever there is a pending motion to dismiss."). That holding comes from a court in this very District — and it forecloses the sweeping reading of *Chudasama* that Defendant now advances before this Court.

What *Chudasama* actually stands for is far narrower: courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount. The operative requirement — "likely meritorious" — is a burden Defendant cannot establish through its MTD. As demonstrated in the next section, Defendant's singular legal argument is contradicted by the overwhelming weight of authority — including by rulings from this very Court. Under the correct reading of *Chudasama*, that is the end of the inquiry.

Here, Defendant has not met its burden to demonstrate that the costs and burdens of proceeding with discovery justify granting its motion to stay or that its MTD is likely meritorious. Instead, TAOS generically asserts that a stay is necessary to avoid "potentially needless and costly discovery" while its MTD is pending. Mot. at 3. But the possibility of "potentially needless and costly discovery" while a motion to dismiss is pending is present in virtually every case. And if that alone were the standard, then motions to stay discovery would not be rarely granted; they would be the norm. Something more is necessarily required in order to justify the "extraordinary relief of staying discovery." *Davis v. Coast Dental Servs., LLC*, No. 8:22-cv-941-KKM-TGW, 2022 U.S. Dist. LEXIS 184992, at *2 (M.D. Fla. Sep. 1, 2022). That something more, as caselaw makes clear, is a showing of unusual circumstances coupled with a specific showing of prejudice or undue burden. Defendant has not pointed to any unusual circumstances in this routine TCPA

class action, has not raised any novel issue of law — particularly where the only circuit court to address the question has rejected Defendant's position — and has not made any specific showing of prejudice or undue burden.

Defendant's Motion to Dismiss does not present any novel issue or argument that is both clearly meritorious and truly case-dispositive. To the contrary, the Ninth Circuit has squarely rejected Defendant's central argument, holding post-*Loper Bright* and without *Chevron* deference that "a 'text message' constitutes a 'call' within the meaning of the TCPA." *Howard*, 164 F.4th at 1124. There are now at least twenty courts following the Supreme Court's holding in *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 149 (2025), holding that text messages are still calls under the TCPA (including four in this District and the Ninth Circuit) and only a handful of outlier decisions holding the opposite. Defendant has therefore failed to carry its burden to identify any unusual circumstances warranting a stay of discovery.[1]

---

[1] *See Hoffman v. Jelly Belly Candy Co., Inc.*, 2020 WL 5239884, at *2 (E.D. Cal. June 26, 2020) (staying case because a pending Supreme Court case would impact the court's decision on a motion to dismiss); *Seefeldt v. Ent. Consulting Int'l, LLC*, 441 F. Supp. 3d 775, 779 (E.D. Mo. 2020) (same); *Grieben v. Fashion Nova, Inc.*, Case No. 1:21-cv-23664 (S.D. Fla. Jan. 21, 2022) (Dkt. 41) (granting stay to allow Attorney General to intervene on a constitutional challenge); *Goldstein v. Costco Wholesale Corp.*, No. 21-CV-80601-RAR, 2021 U.S. Dist. LEXIS 126534, at *4 (S.D. Fla. July 7, 2021) (involving a novel theory of first impression and noting the "dearth of case law on these novel issues, [and] the dismissal of nearly identical suits indicat[ing] that Defendant's Motion to Dismiss has sufficient merit to warrant a temporary stay of discovery"); *Zarnesky v. Adidas Am., Inc.*, No. 6:21-cv-540-PGB-GJK, 2021 U.S. Dist. LEXIS 165336, at *8 (M.D. Fla. June 10, 2021) ("Plaintiff's claim is unlike any the Court has seen before. The motion to dismiss appears to have serious merit, such that there is a real possibility it will be granted."); *McCabe v. Foley*, 233 F.R.D. 683, 684 (M.D. Fla. 2006) (finding plaintiff made only conclusory allegations to meet heightened pleading requirements in a derivative lawsuit); *Padilla v. Porsche Cars N. Am., Inc.*, No. 18-24988-CIV, 2019 U.S. Dist. LEXIS 45525, at *3 (S.D. Fla. Mar. 19, 2019) (not a TCPA case, involving statute of limitations, damages under the Florida Deceptive and Unfair Trade Practices Act, and lack of privity); *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 659 (W.D. Va. 2019) (granting stay of proceedings — not discovery — pending the outcome of a state legislative session); *Levy v. Sterling Holding Co., LLC*, Civil Action No. 00-994 (GMS), 2004 U.S. Dist. LEXIS 19180, at *3 (D. Del. Sep. 27, 2004) (granting stay of case — not discovery — because the SEC proposed clarifying amendments that may control the outcome of the litigation).

**B.** **A Preliminary Peek at Defendant's Motion to Dismiss Confirms That It Is Neither Clearly Meritorious Nor Truly Case-Dispositive: Text Messages Are "Telephone Calls" Under Section 227(c)(5).**

Defendant's Motion to Dismiss rests heavily on a single argument: that Section 227(c)(5) does not provide a private right of action for text messages because the statute refers to "telephone calls." TAOS presents this as though it were settled law supported by a clear consensus of judicial authority. It is not. It is a minority position — one that has been considered and rejected by the Ninth Circuit, the overwhelming majority of district courts, and this very Court.

The preliminary peek reveals what TAOS does not want this Court to see: the weight of authority runs decisively against it. In *Bosley v. A Bradley Hospitality LLC*, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025), this Court held that plaintiff's allegations that text messages constituted "telephone solicitations" were sufficient to state a claim under Section 227(c)(5). Similarly, in *Taylor v. Cider (US) Holding Ltd.*, 2026 WL 91453, at *2 (S.D. Fla. Jan. 13, 2026), This Court reached the same conclusion. These holdings are consistent with the Supreme Court's recognition that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)," *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), and with the Eleventh Circuit's acknowledgment that "the FCC—by regulation—has interpreted the word 'call' to include text messages," *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 307 n.2 (11th Cir. 2025). Judge Dimitrouleas in *Piet v. Office Depot, LLC*, 2025 U.S. Dist. LEXIS 230981 (S.D. Fla. Nov. 24, 2025), reached the same result after expressly acknowledging that on a "blank slate" he might agree with the contrary view — yet still held that "a text message is a call for the purpose of the TCPA" based on the FCC's longstanding interpretation.

TAOS attempts to dismiss *Bosley* and *Taylor* by arguing that the issue was "uncontested" in those cases. *See* MTD at 14–15. That characterization is misleading. The fact that several

defendants chose not to contest the issue cuts against Defendant, not for it: in both *Bosley* and *Taylor*, the defendants—represented by sophisticated counsel—chose not to contest the issue, precisely because the law is clear. Moreover, these were not mere dicta — they were necessary holdings on the elements of the plaintiff's claims. And the Ninth Circuit's decision in *Howard* — the only circuit court to conduct de novo review of this question post-*Loper Bright* — held that "even in the absence of *Chevron* deference," a text message constitutes a "call" under the TCPA. 164 F.4th at 1124. TAOS's MTD cannot be "clearly meritorious" when it asks this Court to reject binding Supreme Court precedent, the Ninth Circuit's reasoning, the Eleventh Circuit's acknowledgment, and its own prior holdings.

Courts across the country have held that text messages are "telephone calls" under Section 227(c)(5), applying careful analysis of the statute's text, structure, purpose, and the FCC's reasonable interpretation. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026) (holding, post-*Loper Bright*, that texts are calls under § 227(c)(5)); *Bosley v. A Bradley Hospitality, LLC*, No. 25-cv-22336, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) (same); *Taylor v. Cider (US) Holding Ltd.*, 2026 WL 91453, at *2 (S.D. Fla. Jan. 13, 2026) (same); *Piet v. Office Depot, LLC*, 2025 U.S. Dist. LEXIS 230981 (S.D. Fla. Nov. 24, 2025) (same); *Newell v. Children's Dental Health Assocs., LLC*, No. 25-5238, 2026 WL 927378, at *5 (E.D. Pa. Apr. 6, 2026) (same); *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112, 2026 WL 884170, at *6 (D. Conn. Mar. 31, 2026) (same); *McGonigle v. Shopperschoice.com, L.L.C.*, 2026 WL 413198, at *6 (M.D. La. Feb. 13, 2026) (same); *Rabbitt v. Rohrman Midwest Motors, Inc.* (N.D. Ill. Mar. 27, 2026) (same); *Cole v. C/T Install America, LLC*, No. 5:25-cv-03531-CH (E.D. Pa. Mar. 23, 2026) (same); *Rubin v. Staples, Inc.*, 2026 U.S. Dist. LEXIS 70359 (D.N.J. Mar. 31, 2026) (same); *Mey v. Liberty Home Guard, LLC*, 2026 U.S. Dist. LEXIS 739 (N.D. W. Va. Jan. 5, 2026) (same); *Alvarez v.*

9

*Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at *6 (S.D. Tex. Jan. 26, 2026) (same); *Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-00149-DCG, 2026 WL 319779, at *6 (W.D. Tex. Jan. 13, 2026) (same); *Wilson v. Better Mortg. Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025) (same); *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025) (same); *Wilson v. MEDVIDI, Inc.*, No. 5:25-cv-03996, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025) (same); *Esquivel v. Mona Lee, Inc.*, No. 3:25-cv-00607-H-BLM, 2025 WL 3275607, at *3 (S.D. Cal. Nov. 24, 2025) (same); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093-JLS-BFM, 2025 WL 3549868, at *3 (same); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *3 (N.D. Ill. Nov. 10, 2025) (same).

Defendant's contrary cases are not only outliers — they are analytically deficient. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025), *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025), and *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), all commit the very error that *Loper Bright* forbids: substituting today's colloquial meaning of "call" for the original public meaning at the time of the TCPA's enactment in 1991. As the Ninth Circuit explained, the plain and ordinary meaning of "'call' . . . refer[s] to an attempt to communicate by telephone," and "[t]ext messaging plainly fits within that literal definition." *Howard*, 164 F.4th at 1124 (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 (9th Cir. 2009)). Moreover, none of these cases accounts for the TCPA's statutory structure: § 227(b) uses the identical term "telephone call" and it is undisputed that "telephone call" in § 227(b) encompasses text messages, *Campbell-Ewald*, 577 U.S. at 156, and "[a] word or phrase is presumed to bear the same meaning throughout a text," *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). The FCC has expressly held that text messages are covered by the TCPA's Do Not Call Registry provisions. *In re Targeting & Eliminating*

10

*Unlawful Text Messages*, 38 FCC Rcd. 12247, 12247 (Dec. 18, 2023). That interpretation remains in force, has not been set aside by any court, and warrants "appropriate respect" even under the post-*Loper Bright* framework. *McLaughlin*, 606 U.S. at 168. A court applying the correct standard would uphold it.

TAOS's Motion to Dismiss, in short, asks this Court to adopt a minority statutory interpretation that the FCC has rejected, that the majority of courts have rejected, that the Ninth Circuit has rejected even without agency deference, and that this very Court has rejected twice. That is not a motion that warrants halting discovery. That is a motion that warrants denial.

Moreover, TAOS's MTD raises a secondary argument that the text messages at issue are not "telephone solicitations" or "telemarketing" because they were merely "double opt-in" confirmation messages. *See* MTD at 17–21. This argument fares no better on a preliminary peek. Just days before TAOS filed its Renewed Motion, the Ninth Circuit reversed a district court that had dismissed a TCPA claim on materially indistinguishable grounds, holding that "[t]he 'purpose' at issue is not, on a plain read, the purpose of the call or message, but instead of the 'initiation' of that call or message." *Coffey* v. *Fast Easy Offer, LLC*, No. 25-4066, slip op. at 8 (9th Cir. June 4, 2026). Here, the post-stop messages stated: "Reply Y to subscribe to recurring automated personalized marketing alerts (e.g., cart reminders) from The Art of Shaving." SAC ¶ 18. These messages were not innocuous registration confirmations — they were marketing communications designed to re-engage a consumer who had already opted out. The purpose of these messages was to enroll Plaintiff in a commercial marketing program whose sole function is to encourage the purchase of The Art of Shaving's products. Under *Coffey*, that commercial purpose is precisely what the TCPA targets.

Indeed, Florida courts have found that messages far less explicitly commercial than those at issue here constitute "telephone solicitations." In *Germain v. Mario's Air Conditioning and Heating, Inc.*, 2025 WL 2229885, at *2–3 (M.D. Fla. Aug. 5, 2025), the court granted summary judgment to the plaintiff, holding that even a seemingly informational hurricane-preparedness message was "undisputably a solicitation" because it "serves as a pretext to commercial activity and encourages the ultimate purchase or sale of services." Similarly, in *Lawson v. Visionworks of America, Inc.*, 741 F. Supp. 3d 1251, 1254–55 (M.D. Fla. 2024), the court denied a motion to dismiss where text messages merely reminded the plaintiff he was "overdue for [his] eye exam," holding: "Simply put, the message was not purely informational, and Defendant did stand to gain financially from a transaction with Plaintiff if he acted on the message." If hurricane-safety texts and eye-exam reminders qualify as solicitations, messages that explicitly ask a consumer to subscribe to "marketing alerts" and "cart reminders" for a cosmetics retailer should properly qualify as solicitations under the TCPA.

Whether the messages constitute telemarketing is, at a minimum, a fact-intensive inquiry that cannot be resolved at the pleading stage. In *Bosley*, this Court held that similar text messages containing "discounts and promotions" with the intent to drive customers to defendant's business were sufficient to plausibly allege a "telephone solicitation." 2025 WL 2686984, at *5. Accordingly, neither of TAOS's arguments in its MTD are "clearly meritorious and truly case dispositive" — the exacting standard required for a stay.

TAOS's final argument — that Plaintiff's CTSA claim fails because Plaintiff has not alleged an "ascertainable loss of money or property" — is equally unavailing. As an initial matter, TAOS's own Opt-In Confirmation Messages state: "Msg and data rates may apply." SAC ¶ 18. This language is an express acknowledgment by TAOS that receiving its text messages may

impose a monetary cost on the recipient in the form of messaging charges and data usage fees. Having sent five such messages to Plaintiff's phone without his consent (including messages sent at 10:47 PM, 10:55 PM, 11:08 PM, and 4:12 AM) TAOS cannot now credibly argue that Plaintiff suffered no ascertainable loss. Moreover, CUTPA's ascertainable loss requirement is a low bar; far lower than TAOS suggests. The Connecticut Supreme Court has long held that the words "any ascertainable loss" do not require a plaintiff to prove a specific amount of actual damages; rather, "'[a]scertainable' means 'capable of being discovered, observed, or established.'" *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 440 A.2d 810, 816 (1981). As the court in *Davis v. Angelcare USA, LLC* explained, the ascertainable loss requirement "does not . . . limit CUTPA to 'providing redress only for consumers who can put a precise dollars and cents figure on their loss.'" 727 F. Supp. 3d 99, 133 (D. Conn. 2024) (quoting *Hinchliffe*, 440 A.2d at 816). Rather, "[a] loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . Under CUTPA, there is no need to allege or prove the amount of the actual loss." *Id.* (quoting *Marinos v. Poirot*, 308 Conn. 706, 66 A.3d 860, 866 (2013)). Indeed, "the private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 276 (D. Conn. 2017) (citing *Madonna v. Acad. Collection Serv., Inc.*, No. 3:95-CV-00875, 1997 WL 530101, at *11 (D. Conn. Aug. 12, 1997) (approximately $1.00 in postage stamps constituted sufficient ascertainable loss)). As the court held in *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 272 (D. Conn. 2005), "[w]henever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." Here, Plaintiff bargained for — and received confirmation of — the cessation of TAOS's text messages, only to receive five additional unwanted messages that

13

TAOS itself warned could incur charges. Whether Plaintiff has adequately alleged ascertainable loss is plainly not the type of "clearly meritorious and truly case dispositive" argument that warrants a stay.

Further, TAOS's reliance on *Lundstedt v. I.C. Sys., Inc.*, No. 3:15-cv-00824-JAM, 2017 WL 4281057, at *5 (D. Conn. Sept. 27, 2017) is misplaced, as *Lundstedt* is plainly distinguishable from this case on multiple grounds. In *Lundstedt*, the Court concluded that because the plaintiff only alleged "that he sustained emotional injury from being subject to many debt collection calls," he had not adequately pled an ascertainable loss under CUTPA. *See also DiTeresi v. Stamford Health Sys.*, 149 Conn. App. 502, 510, 88 A.3d 1280 (2014) (holding that "emotional distress, by itself" does not constitute an ascertainable loss under CUTPA). The *Lundstedt* plaintiff alleged no monetary harm whatsoever — only emotional distress. By contrast, Plaintiff here alleges concrete economic harm: TAOS bombarded Plaintiff during the late hours of the night with marketing messages that explicitly stated on their face that "Msg and data rates may apply," SAC ¶ 18 — an express acknowledgment by TAOS that each message may impose measurable charges on the recipient. These are allegations of actual monetary cost, which need not be proven with specificity at this stage. And CUTPA demands nothing more. As the Connecticut Supreme Court has made clear, "the failure to prove a particular amount of damages does not render a plaintiff's action subject to dismissal for failure to make a prima facie case." *Hinchliffe*, 440 A.2d at 816. The Second Circuit has likewise confirmed that under CUTPA, "a plaintiff must still show causation, that the allegedly unfair business practice produced a loss of some dimension or magnitude." *Nationwide Mut. Ins. Co. v. Mortensen*, 606 F.3d 22 (2d Cir. 2010). Plaintiff has done exactly that: TAOS sent five unwanted text messages — each carrying the potential for data and messaging charges — to a consumer who had expressly opted out and received confirmation that no further

14

messages would be sent. That is a measurable, ascertainable loss that satisfies CUTPA's threshold requirement under any reading of the statute.

Moreover, TAOS's suggestion that the Court should decline supplemental jurisdiction over the CTSA claim ignores the reality that, as demonstrated above, Plaintiff's federal TCPA claims are well-supported by the overwhelming weight of authority. Dismissal of the federal claims is not a foregone conclusion — it is a minority position that this Court has already rejected twice. But even if the Court were to reach the CTSA claim on its merits, the ascertainable loss requirement presents no barrier. CUTPA "specifically permits equitable relief, and thus expressly contemplates plaintiffs' judgments which do not include an award of money damages." *Goins*, 352 F. Supp. 2d at 272. These "comprehensive remedies are intended to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts." *Id.* Connecticut courts have interpreted CUTPA liberally to effectuate this remedial purpose, *see Bruce v. Home Depot, U.S.A., Inc.*, 308 F. Supp. 2d 72, 76 (D. Conn. 2004) (noting that CUTPA "is intended to be remedial and is to be so construed"), and the ascertainable loss threshold is deliberately set low to ensure that consumers can vindicate their rights even when individual losses are small. TAOS's CTSA argument is neither clearly meritorious nor case-dispositive, and it provides no basis for a stay.

C. **The Class-Wide Nature of This Case Is Not "Additional Good Cause" for a Stay.**

Defendant argues that because this case is a nationwide putative class action, the scope of potential discovery independently justifies a stay. Mot. at 6–8. This argument is as audacious as it is unavailing.

The nationwide scope of discovery in this case exists for one reason: Defendant sent unsolicited telemarketing text messages to a nationwide class of consumers whose numbers are registered on the Do Not Call Registry and who continued to received unwanted messages after

15

opting out. It did not limit its alleged conduct to one person, or one state, or one region. It operated on a class-wide scale. The discovery that Plaintiffs seek reflects the scope of that conduct, nothing more and nothing less. To allow Defendant to invoke the breadth of its own alleged misconduct as grounds for a stay would be to reward defendants for violating the law more broadly. If the mere existence of a putative class action were sufficient to justify a stay of discovery, stays would be the rule rather than the exception in every class action where a motion to dismiss is filed. That is not the law.

Defendant has not made — and cannot make — the "specific showing" of prejudice or undue burden that this Circuit requires. Instead, TAOS raises generic concerns about the costs and burdens of class-wide discovery without identifying a single specific discovery request that is overbroad, without submitting a declaration describing any particular burden, and without explaining why the Federal Rules' proportionality framework is insufficient to address its concerns. TAOS's Renewed Motion notes that Plaintiff's discovery requests include 12 interrogatories, 41 requests for production, and 11 requests for admission. *See* Mot. at 4. But this is standard litigation — the requests seek information that Defendant is required to maintain under FCC regulations, including records of opt-out requests, DNC procedures, and transmission logs. *See* 47 C.F.R. § 64.1200(d). The primary hardship Defendant claims it will suffer if a stay is not granted is the time and expense of litigating this case, which courts have repeatedly held is an insufficient basis to stay proceedings. *See, e.g.*, *Salazar v. Cty. of L.A.*, No. CV-15-09003-MWF-JC, 2016 U.S. Dist. LEXIS 190608, at *19 (C.D. Cal. Sep. 26, 2016) ("the time and expense of wasted discovery is a legitimate concern, 'it does not outweigh the risk that a stay pending the

related proceedings' resolution would simply delay Plaintiffs' day in Court'").[2] Generic assertions about the costs of class discovery, untethered to any particular request or any concrete showing of hardship, are "insufficient to grant the *extraordinary relief* of staying discovery." *Davis v. Coast Dental Servs., LLC*, No. 8:22-cv-941-KKM-TGW, 2022 U.S. Dist. LEXIS 184992, at *2 (M.D. Fla. Sep. 1, 2022).

TAOS has provided no sworn testimony or evidence of burden. It asks this Court to halt all discovery based on nothing more than the generic assertion that class discovery is expensive — an assertion that, if accepted, would convert the exception into the rule and render the "rarely granted" standard entirely meaningless.

Moreover, a blanket stay is simply unnecessary because the Federal Rules already provide TAOS every tool it needs to address legitimate discovery concerns. Discovery in this case can be tailored in a manner proportionate to the needs of the case without halting all discovery. If Defendant believes specific requests are overbroad, the correct path is to confer and narrow them or seek targeted protection. A blanket stay is an extreme remedy and should not be used as a substitute for proportionality analysis. Indeed, early production of core information is likely to reduce cost rather than increase it. Identifying the texting platforms, text logs, vendors, account

---

[2] *See also Rose*, 2015 U.S. Dist. LEXIS 195291, at *5 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis.") (quoting *Lockyer*, 398 F.3d at 1112); *Lathrop v. Uber Techs., Inc.*, No. 14-cv-05678-JST, 2016 U.S. Dist. LEXIS 2490, at *12 (N.D. Cal. Jan. 8, 2016) ("Although Uber may suffer hardship, in the form of additional discovery, the Court concludes that this potential hardship does not merit a stay in this case."); *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2018 U.S. Dist. LEXIS 208121, at *5 (E.D. Cal. Dec. 10, 2018) ("Where defendants have not identified any specific harm beyond the cost of litigation, it has been held that 'being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis.'") (quoting *Lockyer*, 398 F.3d at 1112).

structures, and the presence or absence of centralized campaign control will clarify the scope of the dispute early and allow the parties to conduct discovery efficiently. A stay does the opposite.

### D. A Stay Would Substantially and Concretely Prejudice Plaintiff and the Putative Class.

Defendant's assertion that Plaintiff "will not be prejudiced" by a stay, Mot. at 8, is demonstrably incorrect. TAOS argues that because the case is "still in its infancy" and no case management schedule has been entered, Plaintiff faces no harm. Although this case is in its early stages, a stay would still prejudice Plaintiff. If a stay is granted, Plaintiff will be prejudiced because he will be unable to proceed with discovery, witness memories fade over time, original documents can be lost before trial, and a protracted stay leads to irreversible loss of needed information. *Young v. Peraza*, No. 15-60968-CIV-COHN/SELTZER, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."). This rings particularly true here, where much of the discovery Plaintiff seeks is likely in the custody of non-parties — the very vendors and platforms Defendant used to transmit the text messages at issue. TAOS has not confirmed that an internal litigation hold is in place, nor has it confirmed that those third-party vendors have been notified of this litigation and are preserving relevant data. *See Saleh v. Crunch, Ltd. Liab. Co.*, No. 17-62416-Civ-COOKE/HUNT, 2018 U.S. Dist. LEXIS 36764, at *4–5 (S.D. Fla. Feb. 28, 2018) ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses").

The risk to the putative class members is not hypothetical — it is the kind of risk that ends cases. Plaintiffs in putative class actions "may suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate." *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-

JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016). Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members. *See Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the defendant summary judgment for substantially the same reason). These are not abstract cautionary tales — they are the predictable and documented consequence of allowing evidence to deteriorate while defendants delay. TAOS offers no solution to these problems and no assurance that the evidence Plaintiff needs will still exist when a stay is eventually lifted.

TAOS's claim that this case "remains in its early stages" and that "no imminent deadlines would be disrupted," Mot. at 8, does not negate the prejudice to Plaintiff. While the Court has not yet issued a case management schedule, that only underscores that discovery should proceed in the ordinary course. TAOS's Renewed Motion cites *McGonigle v. Pure Green Franchise Corp.*, No. 0:25-cv-61164-AHS, 2026 WL 111338 (S.D. Fla. Jan. 15, 2026), for the proposition that a stay is appropriate in TCPA § 227(c)(5) cases. But *McGonigle* is distinguishable: there, the court faced a single filing without the procedural history of pleading amendments and motions to stay that characterize this case. Moreover, *McGonigle* noted that whether § 227(c)(5) encompasses text messages "is a question of law that does not require discovery." *Id*. at *2. That observation cuts both ways: if the issue is purely legal, there is no reason discovery cannot proceed in parallel while the Court resolves it, as discovery relates to factual issues (consent, class membership, TAOS's texting practices) that will be necessary regardless of how the Court rules on the threshold legal question. Plaintiff seeks to proceed with discovery to secure records necessary for class

certification and summary judgment as he investigates Defendant's conduct. A stay of discovery will prejudice Plaintiff and the class members. As the saying goes, justice delayed is justice denied.

## IV.        **CONCLUSION**

TAOS chose to send unsolicited telemarketing text messages to a nationwide class of consumers without their consent and without having implemented procedures that met the minimum standards for telemarketing as outline by 47 C.F.R. § 64.1200(d)(1)-(6) — including messages sent after Plaintiff expressly opted out and received confirmation that no more messages would be sent, and including messages sent at 10:47 PM, 10:58 PM, 11:08 PM, and 4:12 AM. Had TAOS properly implemented the required telemarketing procedures for handling consumer opt outs and honoring the TCPA's time-restrictions, it would not be facing this present lawsuit. A stay of discovery is a rare and extraordinary remedy — not a mechanism by which defendants may delay accountability simply by filing a motion to dismiss that contradicts the overwhelming weight of judicial authority, including the Ninth Circuit, the Supreme Court, and this very Court.

TAOS has not demonstrated good cause. It has not identified unusual circumstances. It has not made a specific showing of prejudice or undue burden. And it has not established that its Motion to Dismiss is clearly meritorious and truly case-dispositive — the exacting standard this Circuit demands. To the contrary, the Ninth Circuit has squarely held that texts are calls under the TCPA, the overwhelming weight of district court authority agrees, *Chudasama* does not mandate a stay in these circumstances, and the prejudice to Plaintiff and the putative class from a stay is real, concrete, and irreversible.

For the foregoing reasons, Plaintiff Kevin Connelly respectfully requests that this Court enter an Order: (1) denying Defendant's Renewed Motion to Stay Discovery in its entirety; and (2) granting such other and further relief as this Court deems just and proper.

Date: June 17, 2026

Respectfully submitted,

**Shamis & Gentile, P.A.**
*/s/ Christopher Berman*
Christopher Berman, Esq.
Florida Bar # 1010654
cberman@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180

*Counsel for Plaintiff and the Classes*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that a true and correct copy of the foregoing was served via the

Court's ECF system this 17th day of June 2026 to all counsel of record.

*/s/Christopher Berman*
Christopher Berman, Esq.

21