**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| KEVIN CONNELLY, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | **Case No. 1:26-cv-20843-BLOOM** |
| v. | ) ) | |
| THE ART OF SHAVING-FL, LLC, | ) ) | |
| *Defendant.* | ) | |

**REPLY IN SUPPORT OF DEFENDANT THE ART OF SHAVING-FL,
LLC'S RENEWED MOTION TO STAY DISCOVERY AND
MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

TAOS should not suffer the significant burdens of Plaintiff's requested class discovery while this Court finally has the opportunity to consider dispositive legal challenges to Plaintiff's Second Amended Complaint.  As explained in the Motion, TAOS's Motion to Dismiss has a strong likelihood to be granted because, among other reasons, numerous courts in the Eleventh Circuit interpreting the TCPA have concluded that Plaintiff does not have a cause of action under Section 227(c)(5) for receiving text messages.  *See* Mot. at 7–10 (citing *inter alia Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270 (N.D. Fla. Aug. 26, 2025)).  Further, a balance of equities favors a stay of discovery because TAOS faces costly and burdensome class discovery, like the requests attached as Exhibit A to the Motion, while any slight delay would not cause Plaintiff appreciable harm.  *See* Mot. at 10–13.

Plaintiff's opposition to the instant Motion ("Opposition" or "Opp," ECF No. 32) does not undermine any point established in the Motion.  With respect to the strength of the Motion to Dismiss, Plaintiff attempts to place a higher burden than "strong likelihood" and attempts to have

this Court conclusively resolve the Motion to Dismiss rather than take a "preliminary peek" at what it shows on its face.  Moreover, the Opposition's arguments with respect to the Motion to Dismiss rely on out-of-Circuit and otherwise inapposite decisions.  With respect to the balance of equities, Plaintiff's opposition attempts to discount the real harms to Defendant of discovery, including discovery already served by Plaintiff, while simultaneously proffering hypothetical harms to Plaintiff.  No caselaw support such a balancing of equities, and Plaintiff cites none.

For good cause as explained in the Motion and below, the Court should stay discovery. *See McGonigle v. Pure Green Franchise*, No. 25-cv-61164-AHS, 2026 WL 111338, at \*2 (S.D. Fla. Jan. 15, 2026).

## II.   <u>ARGUMENT</u>

As demonstrated in the Motion, (A) there is a strong likelihood that the Motion to Dismiss will be granted and eliminate the need for discovery, *see* Mot. at 7–10, and (B) a balance of equities weighs in favor of a stay, *see id.* at 10–13.  The Opposition does not disturb either conclusion.

### A.   <u>There Is a Strong Likelihood that the Motion to Dismiss Will Be Granted and Eliminate the Need for Discovery.</u>

#### 1.   Plaintiff Misstates the Standard for Strong Likelihood.

Plaintiff spends much effort arguing that, because Plaintiff is aware of out-of-circuit cases it would cite in opposition to TAOS's Motion to Dismiss, the Motion to Dismiss is not "clearly meritorious nor truly case-dispositive" and the instant Motion should be denied.  *E.g.*, Opp. at 8. This argument misapprehends the applicable standard.  In resolving a motion to stay discovery pending a motion to dismiss, "the Court is not required to move the Defendant['s] motion to dismiss to the front of the line . . . and fully adjudicate it on the spot."  *McGonigle*, 2026 WL 111338, at \*1 (granting motion to stay pending motion to dismiss TCPA § 227(c)(5) claim). Instead, the Court must take a "preliminary peek" at the motion to decide whether it is "clearly

meritorious and truly case dispositive." *Bienaime v. Fla. Dep't of Child. & Fams.*, No. 1:24-cv-23018-BB, 2024 WL 4665253, at *2 (S.D. Fla. Nov. 4, 2024) (Bloom, J.) (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652–53 (M.D. Fla. 1997)).   As this Court has explained, the relevant inquiry under this standard is whether "if **on [the motion to dismiss's] face** there appears to be an **immediate and clear possibility** that it will be granted." *Id.* (quoting *Feldman*, 176 F.R.D at 653) (brackets in original; emphasis supplied).

As explained in the Motion and below, the face of the Motion to Dismiss shows the "clear possibility" that it will be granted.  The Opposition puts forth distinguishable cases in an attempt to have the Court resolve the entire Motion to Dismiss, which does not change the conclusion that there is a clear possibility.  *See Bienaime*, 2024 WL 4665253, at *2.

### 2.       The Motion to Dismiss Shows a Strong Likelihood that It Will Be Granted Because Text Messages Are Not Calls.

As demonstrated in the Motion, the face of the Motion to Dismiss shows there is a strong likelihood that it will be granted because text messages are not calls.  *See* Mot. [ECF No. 29] at 7 (citing Motion to Dismiss [ECF No. 28] at 6–17).  The Motion to Dismiss collects numerous cases in the Eleventh Circuit holding that, since *Loper Bright* and *McLaughlin Chiropractic*, Section 227(c)(5) of the TCPA does not provide a private right of action for individuals who receive a text message.  *See* Motion to Dismiss [ECF No. 28] at 2.  For this reason alone, the Motion to Dismiss has shown on its face a "clear possibility" that it will be granted.

In opposition, Plaintiff does not dispute that, if text messages are not "calls" under Section 227(c)(5), then Plaintiff's TCPA claims must be dismissed.  *See generally* Opp. at 8–11. Nor does Plaintiff dispute that numerous courts in the Eleventh Circuit have dismissed similar claims on this basis.  *See generally id.*  Instead, Plaintiff attempts to litigate the entire merits of the Motion to Dismiss by claiming that this interpretation of Section 227(c)(5) has been "considered

3

and rejected by the Ninth Circuit, the overwhelming majority of district courts, and this very Court." Opp. at 8. Even were this Court to go beyond the face of the Motion to Dismiss and address Plaintiff's arguments, this Court should reject Plaintiff's cited authority as inapposite.

Plaintiff makes much of the Ninth Circuit's decision in *Howard v. Republican National Committee*, 164 F.4th 1119 (2026). *See, e.g.*, Opp. at 9. Plaintiff fails to mention that the Ninth Circuit's decision in *Howard* interpreted the meaning of "call" for a Section 227(*b*) claim, not a Section 227(*c*) claim. *See* 164 F.4th at 1125 (citing 47 U.S.C. §§ 227(b)(1)(A), 227(b)(1)(B)). The Motion to Dismiss already addressed that these two subsections are meaningfully different. *See* Motion to Dismiss [ECF No. 28] at 16 ("Importantly, § 64.1200(a) was promulgated under § 227(b)—which governs restrictions on the use of "any automatic telephone dialing system or an artificial or prerecorded voice"—and not under § 227(c)."). Moreover, the *Howard* court affirmed a dismissal of the Plaintiff's § 227(b) claim on the basis that the defendant there did not "make" or "initiate" a call "using" a prerecorded voice, which makes the *Howard* court's interpretation of the meaning of "call" strictly dicta. *See* 164 F.4th at 1125 ("Howard has not alleged that the RNC '*ma[d]e*' or '*initiate[d]*' that 'call' '*using*' the artificial or prerecorded voice, as required to state a claim under the subsections." (emphasis in original)).

Plaintiff also points to two decisions of this Court, *Bosley v. A Bradley Hosp. LLC*, No. 1:25-cv-22336-BB, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) and *Taylor v. Cider (US) Holding Ltd.*, No. 25-cv-24496-BB, 2026 WL 91453, at *2 (S.D. Fla. Jan. 13, 2026), where this Court stated that "a text message constitutes a 'call' under the TCPA." *See* Opp. at 8–9. As explained in the Motion to Dismiss, the issue of whether a text message constitutes a call under the TCPA was uncontested in both *Bosley* and *Taylor*, and the Court did not have occasion to interpret the statute independently as required by *Loper Bright* and *McLaughlin*. *See* Motion to

Dismiss [ECF No. 28] at 15–16.  In Opposition, Plaintiff oddly contends that "uncontested" is a "misleading" characterization, but acknowledges that defendants in those cases "chose not to contest the issue."  Opp. at 8–9.  A single sentence regarding an element of a claim that was not disputed in a case is not persuasive precedent, even if the element was necessary to state a claim and the Court assumed the element was satisfied.  *See, e.g.*, *United States v. Trump*, 740 F.Supp.3d 1245, 1293 (S.D. Fla. 2024) ("In sum, the prefatory, passing remark in *Nixon* about 28 U.S.C. §§ 509, 510, 515, 533, does not stand as binding precedent for a point that was not raised, argued, disputed, or analyzed in that case, even if possibly assumed.").

Plaintiff next argues the Court should "uphold" the FCC's pre-*McLaughlin* decision that the TCPA's Do Not Call Registry provision covers "text messages."  Opp. at 10–11 (citing *In the Matter of Targeting and Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247 (2023)).  The Court should reject Plaintiff's attempt to "resurrect *Chevron*."  *McGonigle*, 2026 WL 111338, at *2.  For one thing, the Eleventh Circuit has already looked askance at that FCC legislative rule.  *See Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 308 (2025) (vacating rule in part).  For a second, district courts are "not bound by the FCC's interpretation of the TCPA."  *McLaughlin Chiropractic*, 606 U.S. at 168.  Again, Plaintiff never shows *how* the TCPA could be read for "telephone calls" to encompass text messages.  The merits—*i.e.*, the TCPA's "text," *see Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021)—favor staying discovery.

In the absence of any reasoned explanation of why Section 227(c)(5)'s use of the word "call" should apply to text messages, Plaintiff points instead to what he claims is an "overwhelming majority of district courts" which have so held.  Opp. at 8; *see also id.* at 9–10 (collecting cases).  In addition to erroneously counting *Bosley* and *Taylor* among the cases which supposedly concluded that Section 227(c)(5) applies to text messages after "applying careful analysis of the

statute's text, structure, purpose," Opp. at 9, Plaintiff's list of decisions is deficient because it is reliant on out-of-Circuit decisions which do not follow the Eleventh Circuit's approach of statutory interpretation independent of FCC rulemaking. *Compare, e.g.*, *Mey v. Liberty Home Guard, LLC*, No. 5:23-cv-00281, 2026 WL 486556, at *6 (N.D.W. Va. Jan. 5, 2026) ("the FCC's interpretation remains entitled to respect") *with Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 311 (11th Cir. 2025) (vacating FCC order as exceeding authority under the TCPA because order conflicted with ordinary statutory meaning).

The face of the Motion to Dismiss demonstrates that it has a strong likelihood to be granted because text messages are not calls under the TCPA. The Opposition to the Motion, which attempts to fully litigate the merits of the Motion to Dismiss with inapposite case law, does not change what is clear from the Motion itself. For this reason, the Court should grant the Motion and stay discovery pending resolution of the Motion to Dismiss.

> **3.       The Motion to Dismiss Shows a Strong Likelihood that It Will Be Granted Because the Opt-In Confirmation Messages Are Not Telephone Solicitations or Telemarketing.**

The Motion should be granted for the independently sufficient reason, as demonstrated in the Motion, that TAOS's Motion to Dismiss shows that Plaintiff's TCPA claims fail because the Opt-In Confirmation Messages are not "telephone solicitations" or "telemarketing." *See* Mot. [ECF No. 29] at 8 (citing Motion to Dismiss [ECF No. 28] at 17–20). An element of Plaintiff's TCPA claims is that Plaintiff receive a call that is for "the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13), (15). There is a clear possibility that the Motion to Dismiss should be granted on this basis, as other courts have similarly held messages relating to consent to receive further marketing are not themselves "telephone solicitations" or "telemarketing." *See Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F.Supp.3d 466 (S.D.N.Y. 2018) (granting motion to dismiss

TCPA claim; holding text messages that "set[] forth the terms and conditions by which [plaintiff] could consent to receive marketing materials" were not telemarketing).

Once again, Plaintiff's Opposition does not dispute that if the Opt-In Confirmation Messages are not "telephone solicitations" or "telemarketing," the TCPA claims must be dismissed. *See generally* Opp. at 11–12. Instead, Plaintiff argues on the merits that another Ninth Circuit decision sets forth a different interpretation. *See id.* at 11 (citing *Coffey v. Fast Easy Offer, LLC*, No. 25-4066, 2026 WL 1614175, at *4 (9th Cir. June 4, 2026)). Plaintiff's reliance on *Coffey* is particularly ironic as the Ninth Circuit there stated that it "need not engage with [] non-binding authority" of "various out-of-circuit and district court cases." 2026 WL 1614175, at *4 n.4. Within the Eleventh Circuit, Plaintiff also argues on the merits that other Florida courts have held other kinds of communications to plausibly constitute "telephone solicitations" or "telemarketing." *See* Opp. at 12 (citing *Germain v. Mario's Air Conditioning and Heating, Inc.*, No. 8:23-cv-671-TPB-CPT, 2025 WL 2229885, at *2–3 (M.D. Fla. Aug. 5, 2025); *Lawson v. Visionworks of America, Inc.*, 741 F.Supp.3d 1251, 1254–55 (M.D. Fla. 2024)). Neither of those cases, however, involved communications relating to future consent to receive telemarketing messages, as is at issue here. *Compare Germain*, 2025 WL 2229885, at *2 ("Mario's AC is reminding you to consider flipping off the breaker to your AC unit during a hurricane. We are here for you. 727-306-0182 STOP to end.") and *Lawson*, 741 F.Supp.3d at 1253 ("Defendant [] sent him numerous text messages to remind him that he was 'overdue for [his] eye exam' and providing a link to schedule an exam.") *with* SAC ¶ 18 ("Reply Y to subscribe to recurring automated personalized marketing alerts. . . .").

Neither of Plaintiff's arguments is a basis to ignore what is established from the face of the Motion to Dismiss: there is a clear possibility that Plaintiff's TCPA claims will be dismissed

because the Opt-In Confirmation Messages are not telephone solicitations or telemarketing. For this independent reason, the Motion should be granted.

    **4.    The Motion to Dismiss Shows a Strong Likelihood that it Will Be Granted as to the CTSA Claim.**

Finally, as explained in the Motion, the Motion to Dismiss on its face demonstrates that Plaintiff's CTSA claim should be dismissed as a declination of supplemental jurisdiction and because Plaintiff has failed to allege an "ascertainable loss of money or property." Mot. [ECF No. 29] at 8; *see also* Motion to Dismiss [ECF No. 28] at 20–21. Plaintiff's opposition does not dispute that this Court should decline to exercise supplemental jurisdiction over the CTSA claim were this Court to dismiss Plaintiff's TCPA claims. *See generally* Opp. at 15. Nor does Plaintiff dispute that his CTSA claim must be dismissed if there are no allegations of an "ascertainable loss of money or property." *See generally* Opp. at 12–15. Instead, Plaintiff again goes beyond the face of the Motion to Dismiss and attempts to argue that Plaintiff has pleaded an ascertainable loss because the alleged text messages at issue state that "Msg and data rates may apply." *Id.* (citing SAC ¶ 18). Noticeably absent from the SAC is any allegation that Plaintiff himself actually incurred any message or data charges for receiving five text messages. *See generally* SAC ¶¶ 50–51 ("Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages."). *Contra* Opp. at 14 ("These are allegations of actual monetary cost, which need not be proven with specificity at this stage"). For these reasons, there is a strong likelihood that the Court will grant the Motion to Dismiss as to Plaintiff's state-law CTSA claim.

**B.** **A Balance of Equities Weighs in Favor of a Stay of Discovery**

As established in the Motion, (1) TAOS would suffer harm in proceeding with class-wide discovery on a meritless claim, *see* Mot. at 10–12, but (2) any countervailing harm Plaintiff would suffer from a temporary stay of discovery would be minimal, *see id.* at 13.

**1.** **TAOS Will Suffer Harms Proceeding With Class-Wide Discovery.**

Multiple courts in this Circuit, as TAOS's motion cites, have stayed discovery on the basis that class action discovery entails significant costs relative to other discovery. *See* Mot. at 11–12 (citing *Skuraskis v. NationsBenefits Holdings, LLC*, 717 F.Supp.3d 1221, 1231 (S.D. Fla. 2023) (staying class-wide discovery given immense costs); *Johnson v. Whaleco, Inc.,* No. 5:23-cv-00403, 2023 WL 6292691, at *1 (M.D. Fla. Sept. 27, 2023) ("[B]ecause Plaintiff has filed a class action lawsuit, discovery into the merits could be unnecessarily expensive and time consuming depending on the resolution of the motion to compel arbitration."); *Leace v. Gen. Motors LLC*, No. 21-cv-60721-RAR, 2021 WL 2827759, at *2 (S.D. Fla. July 8, 2021) ("When faced with legitimate challenges to the legal theory upon which a broad class action complaint rests, a temporary stay of discovery is the proper course until such challenges are resolved.")).  Exhibit A to TAOS's Motion [ECF No. 28-1] is a copy of Plaintiff's first discovery requests—12 interrogatories, 41 requests for production, and 11 requests for admission pertaining to four subclasses—which are the exact kind of broad, costly discovery that TAOS must engage in if discovery is not stayed.

Plaintiff's Opposition does not dispute that Plaintiff is seeking such discovery, and instead calls it "standard."  Opp. at 16.  Yet incredibly, Plaintiff contends that TAOS has not made a "specific showing" of burden while citing no authority for that standard or for the proposition that Plaintiff's propounded discovery are not burdensome. *See id.*  The cases Plaintiff does cite are far afield from this case. *Salazar v. Cnty. of Los Angeles*, No. 15-cv-09003-MWF-JC, 2016 WL 11746844, at *6 (C.D. Cal. Sept. 27, 2016) was itself a ruling on a motion to dismiss where the

9

court mentioned "time and expense of wasted discovery" in the context of evaluating the primary jurisdiction doctrine, *i.e.* whether the case must proceed before an agency tribunal.  And in *Davis v. Coast Dental Servs., LLC*, No. 8:22-cv-00941-KKM-TGW, 2022 WL 4553071, at *1 (M.D. Fla. Sept. 1, 2022), Magistrate Judge Thomas G. Wilson denied a renewed motion to stay or bifurcate discovery in part because Defendant's motion to dismiss argument was a "constitutional challenge" "to be decided by United States District Judge Mizelle," thus "it would be inappropriate for [the Magistrate Judge] to grant a stay based upon my determination of the success of that claim."  Neither *Salazar* nor *Davis* is in remotely the same procedural posture here.  The *Skuraskis*, *Johnson*, and *Leace* decisions are on point.

Because of the burdensome class discovery TAOS would face absent a stay, a stay of discovery is appropriate.  *See, e.g.*, *Skuraskis*, 717 F.Supp.3d at 1231.

### 2.    Any Countervailing Harm Plaintiff Would Suffer is Minimal.

In contrast, Plaintiff has, at worst, only minimal harm from a temporary stay of discovery. *See* Mot. at 13; *see also Scoma Chiropractic, P.A. v. Jackson Hewitt Inc.*, No. 2:17-CV-24-FtM-38CM, 2017 WL 2733758, at *2 (M.D. Fla. June 26, 2017) (finding that "delaying discovery until the Court rules on whether Plaintiff has stated a viable cause of action [under the TCPA] will cause Plaintiff little harm.").  Plaintiff's proffered harms are hypothetical, including Plaintiff cavalierly asserting without any support that there may be "destruction of records necessary to identify class members" and "TAOS has not confirmed that an internal litigation hold is in place, nor has it confirmed that those third-party vendors have been notified of this litigation and are preserving relevant data." Opp. at 18–19.  Plaintiff provides no basis to surmise that any entity would spoliate evidence or that electronically stored information generated in November 2025 (when the texts in Plaintiff's complaint were allegedly sent, SAC ¶ 16) that still exists in June 2026 would cease to exist after the Court decides the motion to dismiss.  Further, Plaintiff provides no explanation of

10

how Plaintiff could suffer substantial harm from a brief stay of discovery pending the resolution of the Motion to Dismiss, but could not suffer harm from the 100 days of delay between the Complaint [ECF No. 1] and SAC [ECF No. 27] due to Plaintiff's counsel's "minor citation error." Opp. at 3. Because TAOS's motion to dismiss will likely render unnecessary the expansive, expensive discovery that Plaintiff seeks, the Court should grant a stay while it considers the pending legal issues that "do[] not require discovery." *McGonigle*, 2026 WL 111338, at *2.

### III. CONCLUSION

For the reasons above and as more fully explained in the Motion, the Court should stay discovery while TAOS's Motion to Dismiss is pending.

Dated: June 24, 2026.

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By: /s/ *Jason Daniel Joffe*
Jason Daniel Joffe
Florida Bar No. 0013564
200 S. Biscayne Blvd., Suite 3400
Miami, FL 33131
Telephone: (305) 577-7000
Facsimile: (305) 577-7001
Email:jason.joffe@squirepb.com

Kristin L. Bryan *(pro hac vice)*
E-mail: kristin.bryan@squirepb.com
Shing Tse *(pro hac vice)*
Email: shing.tse@squirepb.com

*Attorneys for Defendant The Art of Shaving-FL, LLC*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 24, 2026, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to

all counsel of record that are registered with the Court's CM/ECF system.

*/s/ Jason Daniel Joffe*
Jason Daniel Joffe