IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**KEVIN CONNELLY**, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

**THE ART OF SHAVING-FL, LLC,**

Defendant.

**Case No.** 1:26-cv-20843-BLOOM

Honorable Beth Bloom

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Kevin Connelly ("Plaintiff"), hereby files his Response in Opposition to Defendant The Art of Shaving-FL, LLC's ("TAOS" or "Defendant") Motion to Dismiss the Second Amended Complaint ("MTD" or "Motion"), ECF No. 28, and in support thereof, states as follows:

## I.    INTRODUCTION

Defendant's Motion to Dismiss the Second Amended Complaint ("SAC") presents no new arguments. For the third time, Defendant asks this Court to dismiss Plaintiff's claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), based on the same arguments this Court has seen (and rejected) before. Defendant's central thesis, that text messages are not "telephone calls" under § 227(c)(5), **has been rejected by the Ninth Circuit, the overwhelming majority of district courts, and this very Court on at least two separate occasions**. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026) (holding, post-*Loper Bright* and post-*Chevron*, that "a 'text message' constitutes a 'call' within the meaning

1

of the TCPA"); *Bosley v. A Bradley Hosp. LLC*, No. 1:25-cv-22336-BB, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) (Bloom, J.) (holding that a text message constitutes a call under the TCPA); *Taylor v. Cider (US) Holding Ltd.*, No. 25-cv-24496-BB, 2026 WL 91453, at *2 (S.D. Fla. Jan. 13, 2026) (Bloom, J.) (same); *Piet v. Office Depot, LLC*, No. 9:24-cv-81488-WPD, 2025 WL 4676030 (S.D. Fla. Nov. 25, 2025) (Dimitrouleas, J.) (holding that a text message is a call for the purpose of the TCPA and affording appropriate respect to the FCC's interpretation which has been controlling for nearly twenty-five years).

Defendant's Motion relies on a handful of outlier decisions concentrated in a small number of courts, while ignoring that the Ninth Circuit (the only circuit court to address this question post-*McLaughlin*) has squarely held that texts are calls under the TCPA. *See Howard*, 164 F.4th at 1124. In this Motion, Defendant now asks this Court to hold that the TCPA no longer covers text messages, despite decades of case law and regulations holding the opposite. TAOS's position is particularly untenable given that this Court has already addressed this issue and reached the opposite conclusion *twice*.

In this case, Defendant elected to send unsolicited telemarketing text messages to Plaintiff and a nationwide class of consumers without their consent, in alleged violation of the TCPA, 47 U.S.C. § 227(c)(5). After Plaintiff opted out on August 30, 2024, and received confirmation that "[n]o more messages will be sent," Defendant bombarded him with five additional messages — including messages sent at 10:47 PM, 10:55 PM, 11:08 PM, and 4:12 AM — all for the purpose of re-enrolling Plaintiff in a marketing program he had already rejected. SAC ¶¶ 15–18. The SAC states a claim for relief that is plausible on its face. The Motion should be denied.

Defendant's Motion rests on three arguments, none of which withstand scrutiny. First, its argument that Section 227(c)(5) does not apply to text messages because the statute refers to

"telephone calls" is contradicted by the overwhelming weight of judicial authority, including decisions from this very Court, the Ninth Circuit, and the Supreme Court. Second, its argument that the post-stop messages are not "telephone solicitations" or "telemarketing" ignores the commercial purpose of those messages and the context in which they were sent. Third, its argument that Plaintiff's CTSA claim fails for lack of an "ascertainable loss" misconstrues both the allegations in the SAC and the applicable legal standard. For all of these reasons, Defendant's Motion to Dismiss should be denied in its entirety.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that it "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The purpose of the complaint is to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although factual allegations must generally be taken as true when ruling on a motion to dismiss, a court should not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). However, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do," as a plaintiff is required to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555;

*accord Iqbal*, 556 U.S. at 678–79. To determine whether these requirements are satisfied, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "[W]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Here, the SAC's detailed factual allegations, accepted as true, state plausible claims for relief under the TCPA and the CTSA.

III.    **ARGUMENT**

A.    **Text Messages Are "Telephone Calls" Under Section 227(c)(5) of the TCPA.**

Defendant's Motion rests heavily on a single argument: that Section 227(c)(5) does not provide a private right of action for text messages because the statute refers to "telephone calls." TAOS presents this as though it were settled law supported by a clear consensus of judicial authority. It is not. It is a minority position, one that has been considered and rejected by the Ninth Circuit, the overwhelming majority of district courts, and this very Court.

In *Bosley*, 2025 WL 2686984, at *5, this Court held that plaintiff's allegations that text messages constituted "telephone solicitations" were sufficient to state a claim under Section 227(c)(5). Similarly, in *Taylor*, 2026 WL 91453, at *2, this Court reached the same conclusion. These holdings are consistent with the Supreme Court's recognition that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)," *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), and with the Eleventh Circuit's acknowledgment that "the FCC—by regulation—has interpreted the word 'call' to include text messages," *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 307 n.2 (11th Cir. 2025). Judge Dimitrouleas in *Piet v. Office Depot, LLC*, No. 9:24-cv-81488-WPD, 2025 WL 4676030 (S.D. Fla. Nov. 25, 2025), reached the same result after expressly acknowledging that on a "blank slate" he

4

might agree with the contrary view — yet still held that "a text message is a call for the purpose of the TCPA" based on the FCC's longstanding interpretation.

TAOS attempts to dismiss *Bosley* and *Taylor* by arguing that the issue was "uncontested" in those cases. *See* MTD at 14–15. That characterization is misleading. The fact that several defendants chose not to contest the issue cuts against Defendant, not for it. In both *Bosley* and *Taylor*, the defendants—represented by sophisticated counsel—seemingly chose not to contest the issue, precisely because the law is clear. These holdings were not mere dicta—they were necessary to the elements of the plaintiff's claims. And the Ninth Circuit's decision in *Howard* — the only circuit court to conduct de novo review of this question post-*Loper Bright* — held that "even in the absence of *Chevron* deference," a text message constitutes a "call" under the TCPA. *Howard*, 164 F.4th at 1124. TAOS's Motion cannot succeed when it asks this Court to reject binding Supreme Court precedent, the Ninth Circuit's reasoning, the Eleventh Circuit's acknowledgment, and its own prior holdings.

Courts across the country have held that text messages are "telephone calls" under Section 227(c)(5), applying careful analysis of the statute's text, structure, purpose, and the FCC's reasonable interpretation. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026) (holding, post-*Loper Bright*, that texts are calls under § 227(c)(5)); *Bosley v. A Bradley Hosp. LLC*, No. 1:25-cv-22336-BB, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) (same); *Taylor v. Cider (US) Holding Ltd.*, *No. 25-cv-24496-BB,* 2026 WL 91453, at *2 (S.D. Fla. Jan. 13, 2026) (same); *Piet v. Office Depot, LLC*, No. 9:24-cv-81488-WPD, 2025 WL 4676030 (S.D. Fla. Nov. 25, 2025) (same); *Newell v. Children's Dental Health Assocs., LLC*, No. 25-5238, 2026 WL 927378, at *5 (E.D. Pa. Apr. 6, 2026) (same); *Wilson v. Easy Spirit, LLC*, No. 3:25-cv-112, 2026 WL 884170, at *6 (D. Conn. Mar. 31, 2026) (same); *McGonigle v. Shopperschoice.com, L.L.C.*,

5

*No. 25-152-SDD-RLB,* 2026 WL 413198, at *6 (M.D. La. Feb. 13, 2026) (same); *Rabbitt v. Rohrman Midwest Motors, Inc, No.. 1:25-cv-04060* (N.D. Ill. Mar. 27, 2026) (same); *Cole v. C/T Install America, LLC*, No. 5:25-cv-03531-CH (E.D. Pa. Mar. 23, 2026) (same); *Rubin v. Staples, Inc.*, No. 2:25-cv-08295 (D.N.J. Mar. 31, 2026) (same); *Mey v. Liberty Home Guard, LLC*, No. 1:25-cv-00057 (N.D. W. Va. Jan. 5, 2026) (same); *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-cv-00343, 2026 WL 202930, at *6 (S.D. Tex. Jan. 26, 2026) (same); *Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-00149-DCG, 2026 WL 319779, at *6 (W.D. Tex. Jan. 13, 2026) (same); *Wilson v. Better Mortg. Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025) (same); *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025) (same); *Wilson v. MEDVIDI, Inc.*, No. 5:25-cv-03996, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025) (same); *Esquivel v. Mona Lee, Inc.*, No. 3:25-cv-00607-H-BLM, 2025 WL 3275607, at *3 (S.D. Cal. Nov. 24, 2025) (same); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093-JLS-BFM, 2025 WL 3549868, at *3 (C.D. Cal. Nov. 10, 2025) (same); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *3 (N.D. Ill. Nov. 10, 2025) (same).

Defendant's contrary cases are not only outliers; they are analytically deficient. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025), *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025), and *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), all commit the very error that *Loper Bright* forbids: substituting today's colloquial meaning of "call" for the original public meaning at the time of the TCPA's enactment in 1991. As the Ninth Circuit explained, the plain and ordinary meaning of "'call' . . . refer[s] to an attempt to communicate by telephone," and "[t]ext messaging plainly fits within that literal definition." *Howard*, 164 F.4th at 1124 (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 (9th Cir. 2009)). Moreover, none of

these cases accounts for the TCPA's statutory structure: § 227(b) uses the identical term "telephone call" and it is undisputed that "telephone call" in § 227(b) encompasses text messages, *Campbell-Ewald*, 577 U.S. at 156, and "[a] word or phrase is presumed to bear the same meaning throughout a text," *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). The FCC has expressly held that text messages are covered by the TCPA's Do Not Call Registry provisions. *In re Targeting & Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247 (2023). That interpretation remains in force, has not been set aside by any court, and warrants "appropriate respect" even under the post-*Loper Bright* framework. *McLaughlin*, 606 U.S. at 168. A court applying the correct standard would uphold it.

TAOS's reliance on the meaningful-variation canon and the canon against surplusage fares no better. Defendant argues that because § 227(a)(4) defines "telephone solicitation" as "the initiation of a telephone call *or message*," the inclusion of "or message" would be superfluous if "telephone call" already encompassed text messages. But this argument conflates two different statutory terms operating in two different contexts. Section 227(a)(4) defines "telephone solicitation" — a term of art governing the type of communication that triggers regulatory obligations — while § 227(c)(5) uses "telephone call" to define the scope of the private right of action. The phrase "or message" in § 227(a)(4) can readily be understood as a belt-and-suspenders broadening of the solicitation definition to ensure coverage of all forms of telephone-initiated communication, not as evidence that "telephone call" standing alone excludes text messages. *See Howard*, 164 F.4th at 1125 (rejecting the surplusage argument and holding that "or message" in § 227(a)(4) "simply makes explicit what is already implicit in the term 'call'"). Courts have recognized that "[r]edundancies across statutes are not unusual events in drafting," and the surplusage canon is "not an absolute rule." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013); *see also Barton v. Barr*, 590 U.S. 222, 234 (2020) ("The canon against surplusage is not an absolute

rule."). Indeed, the Supreme Court has cautioned that the surplusage canon "assists only where a competing interpretation gives effect 'to every clause and word of a statute,'" and must yield when "context" and "the 'design of the statute as a whole'" point the other way. *Marx*, 568 U.S. at 385 (citation omitted).

Defendant's related argument — that Congress's subsequent amendments to the TCPA in 2018 and 2019 separately referenced "text messages," thereby demonstrating that "telephone call" excludes texts — is equally unavailing. Congress added these references to address specific new regulatory problems (caller-ID spoofing in § 227(e) and criminal penalties in § 227(i)), and it used the phrase "call or text message" in those provisions for the same belt-and-suspenders reason of ensuring comprehensive coverage. Congress's decision to use clarifying language in newly enacted provisions does not retroactively narrow the scope of a term that has been interpreted for decades to include text messages. *See Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 432 (2018) ("[P]ost-enactment legislative history is not a legitimate tool of statutory interpretation."); *see also Howard*, 164 F.4th at 1125 (rejecting the argument that later amendments narrowed the TCPA's original scope). Moreover, the fact that Congress has *never* amended § 227(c)(5) to exclude text messages — despite the FCC's well-known and longstanding interpretation that the TCPA covers texts — is itself probative of congressional acquiescence. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) ("It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.").

TAOS further contends that the FCC's own regulations undercut the argument that "telephone call" includes text messages because certain amended sections of § 64.1200 separately

8

specify when "calls" include text messages (e.g., 47 C.F.R. § 64.1200(a)(9)). But this argument proves too much: the FCC added clarifying language in § 64.1200(a)(9) precisely because those provisions were newly promulgated and addressed specific regulatory contexts. The existence of express clarification in one subsection does not imply exclusion elsewhere — it reflects the agency's ordinary drafting practice of ensuring clarity in new regulatory text. The core regulations at issue here, §§ 64.1200(c) and (d), were promulgated under § 227(c) and have been applied to text messages for over two decades without any court setting aside that application. *See In re Targeting & Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247 (2023) (reaffirming that the TCPA's Do Not Call provisions apply to text messages). Defendant's attempt to use the FCC's own belt-and-suspenders drafting against the agency's longstanding interpretation is unpersuasive.

Defendant also argues that the 2003 FCC Order addressed only text messages sent through an autodialer under § 227(b) and did not reach the provisions at issue here under § 227(c). *See* MTD at 15–16. That reading is far too narrow. In the 2003 FCC Order, the FCC stated broadly that the TCPA "encompasses both voice calls and text calls to wireless numbers," 18 FCC Rcd. at 14115, ¶ 165, and this interpretation was issued in the context of comprehensively addressing the TCPA's regulatory framework — not as a provision-by-provision limitation. Moreover, the FCC's 2023 order expressly reaffirmed that text messages fall within the scope of the TCPA's Do Not Call provisions under § 227(c). *In re Targeting & Eliminating Unlawful Text Messages*, 38 FCC Rcd. at 12247. That more recent pronouncement directly addresses the very provisions at issue here and has not been set aside by any court. Under *McLaughlin*, this Court is directed to afford "appropriate respect" to the agency's interpretation, 606 U.S. at 168, and the FCC's consistent, decades-long position that text messages are covered by the TCPA's Do Not Call regime is entitled to significant weight.

TAOS's Motion, in short, asks this Court to adopt a minority statutory interpretation that the FCC has rejected, that the majority of courts have rejected, that the Ninth Circuit has rejected even without agency deference, and that this very Court has rejected twice. Plaintiff's TCPA claims are well-pleaded and state plausible claims for relief. Defendant's argument that Section 227(c)(5) does not apply to text messages should be rejected.

B. **The Post-Stop Messages Are "Telephone Solicitations" and "Telemarketing."**

TAOS's secondary argument, that the text messages at issue are not "telephone solicitations" or "telemarketing" because they were merely "double opt-in" confirmation messages, fares no better. *See* MTD at 17–21. Just days before TAOS filed its Motion, the Ninth Circuit reversed a district court that had dismissed a TCPA claim on materially indistinguishable grounds, holding that "[t]he 'purpose' at issue is not, on a plain read, the purpose of the call or message, but instead of the 'initiation' of that call or message." *Coffey v. Fast Easy Offer, LLC*, No. 25-4066, 2026 WL 1614175, at *3 (9th Cir. June 4, 2026). Here, the post-stop messages stated: "Reply Y to subscribe to recurring automated personalized marketing alerts (e.g., cart reminders) from The Art of Shaving." SAC ¶ 18. These messages were not innocuous registration confirmations — they were marketing communications designed to re-engage a consumer who had already opted out. The purpose of these messages was to enroll Plaintiff in a commercial marketing program whose sole function is to encourage the purchase of The Art of Shaving's products. Under *Coffey*, that commercial purpose is precisely what the TCPA targets.

Indeed, Florida courts have found that messages far less explicitly commercial than those at issue here constitute "telephone solicitations." In *Germain v. Mario's Air Conditioning and Heating, Inc.*, 2025 WL 2229885, at *2–3 (M.D. Fla. Aug. 5, 2025), the court granted summary judgment to the plaintiff, holding that even a seemingly informational hurricane-preparedness

10

message was "undisputably a solicitation" because it "serves as a pretext to commercial activity and encourages the ultimate purchase or sale of services." Similarly, in *Lawson v. Visionworks of America, Inc.*, 741 F. Supp. 3d 1251, 1254–55 (M.D. Fla. 2024), the court denied a motion to dismiss where text messages merely reminded the plaintiff he was "overdue for [his] eye exam," holding: "Simply put, the message was not purely informational, and Defendant did stand to gain financially from a transaction with Plaintiff if he acted on the message." If hurricane-safety texts and eye-exam reminders qualify as solicitations, messages that explicitly ask a consumer to subscribe to "marketing alerts" and "cart reminders" for a cosmetics retailer should properly qualify as solicitations under the TCPA.

TAOS relies heavily on *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 480–81 (S.D.N.Y. 2018), but that case is readily distinguishable. In *Rotberg*, the court dismissed the claim because the plaintiff failed to allege any facts about the content of the "initial marketing text message" beyond a conclusory label — the complaint did not even reproduce the message's text. *Id.* at 479. By contrast, the SAC here includes the full text of the Opt-In Confirmation Messages, which explicitly reference "recurring automated personalized marketing alerts (e.g., cart reminders)" and are addressed to a consumer who had already opted out. SAC ¶ 18. Moreover, the *Rotberg* court addressed an initial registration message sent *before* any opt-out; here, the messages were sent *after* Plaintiff had twice opted out and received confirmation that no more messages would be sent. The context transforms the nature of the communication: a message seeking to re-enroll a consumer in a marketing program they expressly rejected serves an inherently commercial purpose.

Whether the messages constitute telemarketing is, at a minimum, a fact-intensive inquiry that cannot be resolved at the pleading stage. In *Bosley*, this Court held that similar text messages

11

containing "discounts and promotions" with the intent to drive customers to defendant's business were sufficient to plausibly allege a "telephone solicitation." *Bosley*, 2025 WL 2686984, at *5. Plaintiff's SAC alleges that these messages were sent for the express purpose of enrolling consumers in "recurring automated personalized marketing alerts" — a purpose that is plainly commercial. SAC ¶ 18. Accordingly, the SAC plausibly alleges that the messages constitute "telephone solicitations" or "telemarketing" under the TCPA.

TAOS also cites a line of cases involving registration or enrollment confirmation messages — *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257 (N.D. Cal. 2018), *Daniel v. Five Stars Loyalty, Inc.*, No. 15-cv-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015), and *Aderhold v. Car2go N.A., LLC*, No. 13-cv-00489-RAJ, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014) — for the proposition that messages facilitating a consumer's enrollment or registration do not constitute telemarketing. *See* MTD at 18–19. Each of these cases is distinguishable.

In *An Phan*, the messages were sent as part of an "ongoing business transaction" the plaintiff had initiated minutes earlier. 351 F. Supp. 3d at 1265. In *Daniel*, the text was sent to complete a registration process the plaintiff "had initiated minutes before." 2015 WL 7454260, at *4. And in *Aderhold*, the message served only to "permit [plaintiff] to complete registration" for a car-sharing service. 2014 WL 794802, at *9. In each case, the consumer had *affirmatively and recently* initiated the transaction or registration that triggered the message. Here, by contrast, Plaintiff did the *opposite*: he expressly opted *out* of TAOS's messages and received confirmation that "[n]o more messages will be sent." SAC ¶¶ 15–17. The post-stop messages in this case were not completion of a consumer-initiated transaction; they were an unsolicited attempt by TAOS to re-enroll Plaintiff in a marketing program he had already rejected.

TAOS's reliance on *Vallianos v. Schultz*, No. C19-0464-JCC, 2019 WL 4980649 (W.D. Wash. Oct. 8, 2019), and *Schulz v. Infogroup, Inc.*, No. 3:19-cv-1620-N, 2020 WL 4201636 (N.D. Tex. July 21, 2020), is similarly unavailing. In *Vallianos*, the message content "did not encourage plaintiff to make any purchase" whatsoever. 2019 WL 4980649, at *3–4. In *Schulz*, the calls' purpose was purely informational and bore no connection to any commercial transaction. 2020 WL 4201636, at *2–3. Here, by contrast, the post-stop messages explicitly referenced "recurring automated personalized marketing alerts (e.g., cart reminders) from The Art of Shaving" — language that is unambiguously tethered to the commercial promotion of TAOS's products and services. SAC ¶ 18. The messages were not purely informational; their sole purpose was to funnel Plaintiff into a marketing pipeline designed to encourage future purchases. That is precisely the type of commercial purpose the TCPA's solicitation and telemarketing provisions are designed to regulate. *See Coffey*, No. 25-4066, 2025 WL 2229885, at *3 (9th Cir. June 4, 2026).

## C. **Plaintiff Adequately States a Claim Under the CTSA.**

TAOS's final argument, that Plaintiff's CTSA claim fails because Plaintiff has not alleged an "ascertainable loss of money or property", is equally unavailing. To the contrary, the SAC alleges multiple, specific forms of ascertainable loss. First, TAOS's own Opt-In Confirmation Messages state: "Msg and data rates may apply." SAC ¶ 18. This language is an express acknowledgment by TAOS that receiving its text messages may impose a monetary cost on the recipient in the form of messaging charges and data usage fees. Second, Plaintiff is the sole subscriber to and financially responsible for phone service on the number that received Defendant's unwanted messages. SAC ¶ 42. Third, Plaintiff alleges that Defendant's unsolicited text messages caused him actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. SAC ¶ 49. Fourth, Plaintiff alleges that he wasted

13

fifteen to thirty seconds reviewing each of Defendant's unwanted messages, and approximately fifteen minutes in total addressing and attempting to stop Defendant's solicitations, including the time spent locating and retaining counsel. SAC ¶¶ 50–51. Having sent five such messages to Plaintiff's phone without his consent, including messages sent at 10:47 PM, 10:55 PM, 11:08 PM, and 4:12 AM, TAOS cannot now credibly argue that Plaintiff suffered no ascertainable loss. Moreover, CUTPA's ascertainable loss requirement is a low bar — far lower than TAOS suggests.

The Connecticut Supreme Court has long held that the words "any ascertainable loss" do not require a plaintiff to prove a specific amount of actual damages; rather, "'[a]scertainable' means 'capable of being discovered, observed, or established.'" *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 816 (Conn. 1981). As the court in *Davis v. Angelcare USA, LLC* explained, the ascertainable loss requirement "does not . . . limit CUTPA to 'providing redress only for consumers who can put a precise dollars and cents figure on their loss.'" 727 F. Supp. 3d 99, 133 (D. Conn. 2024) (quoting *Hinchliffe*, 440 A.2d at 816). Rather, "[a] loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . Under CUTPA, there is no need to allege or prove the amount of the actual loss." *Id.* (quoting *Marinos v. Poirot*, 66 A.3d 860, 866 (Conn. 2013)). Indeed, "the private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 276 (D. Conn. 2017) (citing *Madonna v. Acad. Collection Serv., Inc.*, No. 3:95-cv-00875, 1997 WL 530101, at *11 (D. Conn. Aug. 12, 1997) (approximately $1.00 in postage stamps constituted sufficient ascertainable loss)).

Plaintiff's allegations of wasted time likewise constitute ascertainable loss under CUTPA. The SAC alleges that Plaintiff wasted fifteen to thirty seconds reviewing each of Defendant's five unwanted messages and approximately fifteen minutes in total locating counsel and attempting to

14

stop Defendant's solicitations. SAC ¶¶ 50–51. Unlike the plaintiff in *Lundstedt*, who alleged only emotional distress, Plaintiff here alleges a quantifiable expenditure of time that has economic value and that was involuntarily diverted from other activities by Defendant's unwanted messages, particularly those sent at 10:47 PM, 10:55 PM, 11:08 PM, and 4:12 AM. This loss of time is measurable and ascertainable, even if the precise dollar value has not yet been calculated. As the Connecticut Supreme Court held in *Hinchliffe*, "[a]scertainable" means "capable of being discovered, observed, or established," 440 A.2d at 816, and the time Plaintiff lost addressing Defendant's unwanted messages is precisely such a loss.

The structure of the CTSA itself reflects the Connecticut legislature's recognition that the losses caused by unwanted telemarketing communications are real but may be difficult to quantify. The CTSA provides that any violation of the TCPA's do-not-call provisions, 47 USC 227, 16 CFR 310, or 47 CFR 64.1200, "shall constitute a violation of sections 42-284 to 42-288b." CT Gen Stat § 42-288a(b). By incorporating the TCPA's regulatory framework  (under which Congress created statutory damages of $500 per violation precisely because individual losses from unwanted telemarketing are real but difficult to prove, *see* 47 U.S.C. § 227(c)(5)) the Connecticut legislature acknowledged that the harm from unwanted telemarketing is cognizable even when a consumer cannot attach a precise dollar figure to it. It would be paradoxical for the CTSA to deem unwanted telemarketing a *per se* unfair trade practice under CUTPA, CT Gen Stat § 42-288a(k), while simultaneously requiring plaintiffs to quantify with specificity the very losses that the statutory framework was designed to address without such proof.

The conclusion that Plaintiff has adequately alleged ascertainable loss is further reinforced by the treatment of analogous claims in the Article III standing context. Federal courts have consistently held that the receipt of unwanted text messages constitutes a concrete injury sufficient

to confer Article III standing, recognizing that such unsolicited communications cause harms with a "close relationship" to traditionally recognized injuries such as intrusion upon seclusion. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (requiring a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"). If the receipt of unwanted text messages — accompanied by data charges, wasted time, and invasion of privacy — is sufficiently concrete to satisfy Article III's constitutional threshold, it necessarily satisfies CUTPA's statutory ascertainable loss requirement, which is deliberately set lower. *See Hinchliffe*, 440 A.2d at 816 ("the private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute") (citation omitted)).

At a minimum, Plaintiff's allegations of ascertainable loss present fact-intensive questions that cannot be resolved on a motion to dismiss. The SAC alleges that each of TAOS's five messages carried the potential for data and messaging charges, that Plaintiff is financially responsible for phone service, and that Plaintiff expended quantifiable time addressing the unwanted messages. SAC ¶¶ 18, 42, 50–51. Whether and to what extent these costs were actually incurred is a question of proof appropriately resolved through discovery. As the Connecticut Supreme Court has made clear, "the failure to prove a particular amount of damages does not render a plaintiff's action subject to dismissal for failure to make a prima facie case." *Hinchliffe*, 440 A.2d at 816. The ascertainable loss requirement demands only that the loss be "capable of being discovered, observed, or established" — not that the precise amount be proven at the pleading stage. *Id.*

Moreover, as the court held in *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 272 (D. Conn. 2005), "[w]henever a consumer has received something other than what he bargained for,

16

he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." Here, Plaintiff bargained for — and received confirmation of — the cessation of TAOS's text messages, only to receive five additional unwanted messages that TAOS itself warned could incur charges. Plaintiff has adequately alleged an ascertainable loss under CUTPA.

Further, TAOS's reliance on *Lundstedt v. I.C. Sys., Inc.*, No. 3:15-cv-00824-JAM, 2017 WL 4281057, at *5 (D. Conn. Sept. 27, 2017), is misplaced, as *Lundstedt* is plainly distinguishable from this case on multiple grounds. In *Lundstedt*, the Court concluded that because the plaintiff only alleged "that he sustained emotional injury from being subject to many debt collection calls," he had not adequately pled an ascertainable loss under CUTPA. *See also DiTeresi v. Stamford Health Sys., Inc.*, 88 A.3d 1280, 1284–85 (Conn. App. Ct. 2014) (holding that "emotional distress, by itself" does not constitute an ascertainable loss under CUTPA). The *Lundstedt* plaintiff alleged no monetary harm whatsoever — only emotional distress.

TAOS also cites *Larobina v. Wells Fargo Bank, N.A.*, No. 3:10-cv-01279-MPS, 2014 WL 3419534 (D. Conn. July 10, 2014), for the proposition that litigation costs cannot constitute an ascertainable loss under CUTPA. But *Larobina* involved repeated debt-collection calls where the plaintiff's only claimed harm was emotional distress and the costs of suing — the plaintiff alleged no underlying economic injury from the calls themselves. *Id.* at *2, *4. Here, by contrast, Plaintiff's ascertainable loss does not rest on litigation costs. It rests on the measurable charges that TAOS's own messages warned could be incurred: "Msg and data rates may apply." SAC ¶ 18. These are concrete, out-of-pocket monetary costs imposed on a consumer who had expressly opted out and was entitled to receive no further messages. The *Larobina* court's concern — that allowing litigation costs to satisfy the ascertainable-loss requirement would render the threshold

17

meaningless — is simply inapplicable where, as here, the plaintiff alleges actual economic harm independent of the costs of filing suit. *See Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 947 A.2d 320, 330 (Conn. 2008) (holding that CUTPA's ascertainable-loss requirement is satisfied where the plaintiff alleges "some form of economic harm").

In sum, the SAC alleges concrete economic harm from multiple sources: potential data and messaging charges expressly acknowledged by TAOS in its own messages, SAC ¶ 18; the financial burden borne by Plaintiff as the sole subscriber financially responsible for the phone service, SAC ¶ 42; and the quantifiable time Plaintiff wasted reviewing unwanted messages and seeking to stop Defendant's solicitations, SAC ¶¶ 50–51. These are allegations of actual monetary cost, which need not be proven with specificity at this stage. The Second Circuit has confirmed that under CUTPA, "a plaintiff must still show causation, that the allegedly unfair business practice produced a loss of some dimension or magnitude." *Nationwide Mut. Ins. Co. v. Mortensen*, 606 F.3d 22, 29 (2d Cir. 2010). Plaintiff has done exactly that: TAOS sent five unwanted text messages — each carrying the potential for data and messaging charges — to a consumer who had expressly opted out and received confirmation that no further messages would be sent. That is a measurable, ascertainable loss that satisfies CUTPA's threshold requirement under any reading of the statute.

Moreover, TAOS's suggestion that the Court should decline supplemental jurisdiction over the CTSA claim ignores the reality that, as demonstrated above, Plaintiff's federal TCPA claims are well-supported by the overwhelming weight of authority. Dismissal of the federal claims is not a foregone conclusion — it is a minority position that this Court has already rejected twice. But even if the Court were to reach the CTSA claim on its merits, the ascertainable loss requirement presents no barrier. CUTPA "specifically permits equitable relief, and thus expressly contemplates plaintiffs' judgments which do not include an award of money damages." *Goins*, 352 F. Supp. 2d

at 272. These "comprehensive remedies are intended to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts." *Id.* Connecticut courts have interpreted CUTPA liberally to effectuate this remedial purpose, *see Bruce v. Home Depot, U.S.A., Inc.*, 308 F. Supp. 2d 72, 76 (D. Conn. 2004) (noting that CUTPA "is intended to be remedial and is to be so construed"), and the ascertainable loss threshold is deliberately set low to ensure that consumers can vindicate their rights even when individual losses are small. TAOS's CTSA argument fails to establish a basis for dismissal.

IV.     **CONCLUSION**

TAOS chose to send unsolicited telemarketing text messages to a nationwide class of consumers without their consent and without having implemented procedures that met the minimum standards for telemarketing as outlined by 47 C.F.R. § 64.1200(d)(1)-(6) — including messages sent after Plaintiff expressly opted out and received confirmation that no more messages would be sent, and including messages sent at 10:47 PM, 10:58 PM, 11:08 PM, and 4:12 AM. Had TAOS properly implemented the required telemarketing procedures for handling consumer opt outs and honoring the TCPA's time-restrictions, it would not be facing this present lawsuit.

Defendant's Motion to Dismiss fails on all counts. Text messages are "telephone calls" under Section 227(c)(5) — as the Ninth Circuit, this Court, and the overwhelming majority of district courts have held. The Opt-In Confirmation Messages are "telephone solicitations" and "telemarketing" because their purpose was to enroll Plaintiff in a commercial marketing program. And Plaintiff has adequately alleged an ascertainable loss under the CTSA. The SAC states plausible claims for relief under both federal and state law.

19

For the foregoing reasons, Plaintiff Kevin Connelly respectfully requests that this Court enter an Order: (1) denying Defendant's Motion to Dismiss Second Amended Complaint in its entirety; and (2) granting such other and further relief as this Court deems just and proper.

Date: June 24, 2026

Respectfully submitted,

**Shamis & Gentile, P.A.**
*/s/ Christopher Berman*
Christopher Berman, Esq.
Florida Bar # 1010654
cberman@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180

*Counsel for Plaintiff and the Classes*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was served via the Court's ECF system this 24th day of June 2026 to all counsel of record.

*/s/Christopher Berman*
Christopher Berman, Esq.

20