**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| KEVIN CONNELLY, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | **Case No. 1:26-cv-20843-BLOOM** |
| v. | ) ) ) | |
| THE ART OF SHAVING-FL, LLC, | ) ) | |
| *Defendant.* | ) | |

**REPLY IN SUPPORT OF DEFENDANT THE ART OF SHAVING-FL,
LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## I.      INTRODUCTION

Plaintiff's TCPA and CTSA claims, based on his alleged receipt of five text messages, are deficient as a matter of law for multiple reasons.  *First*, following the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.,* 606 U.S. 146 (2025), most courts in the Eleventh Circuit, exercising their duty to independently interpret the TCPA, have concluded that the private right of action under Section 227(c)(5) applies to "telephone calls" and not text messages.  *See* Mot. at 6–17 (citing *inter alia Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270 (N.D. Fla. Aug. 26, 2025)). *Second*, the Opt-In Confirmation Messages are not "telephone solicitations" or "telemarketing" as required to state a claim because they were for the purpose of confirming receipt of future messages, not encouraging the purchase of property, goods, or services.  *See* Mot. at 17–20. *Finally*, as to Plaintiff's derivative state-law CTSA claim, the Court should decline to exercise supplemental jurisdiction over such claim, but regardless, it too fails as a matter of law because Plaintiff has failed to plead the required element of an ascertainable loss.  *See* Mot. at 20–21.

Plaintiff's opposition to the instant Motion ("Opposition" or "Opp.," ECF No. 35) does not undermine any point established in the Motion.  Despite Plaintiff's insistence that the term "telephone calls" includes text messages, he dismisses out of hand the actively developing law in this Circuit concluding otherwise.  As to whether "telephone calls" include text messages, Plaintiff relies on out-of-Circuit cases and a pair of FCC orders which do not analyze the relevant subsection, § 227(*c*).  Moreover, following the Supreme Court's *Loper Bright* decision, the Eleventh Circuit vacated in part one of Plaintiff's cited FCC orders on the basis that the FCC "exceeded its statutory authority under the TCPA" by issuing regulations which "conflict with the ordinary statutory meaning."  *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 307–08 (11th Cir. 2025).  As to whether the Opt-In Confirmation Text Messages constitute "telephone solicitations" or "telemarketing," Plaintiff relies on factually inapposite cases and out-of-Circuit cases that are inconsistent with the law in the Eleventh Circuit.  Finally, Plaintiff argues that he adequately pleads harm under the CTSA because "Msg and data rates *may* apply."  Opp. at 13 (citing SAC ¶ 18) (emphasis supplied).  Yet absent from the SAC is any allegation that Plaintiff actually incurred any charges for receiving text messages.

For these reasons, as explained in the Motion and below, the Court should dismiss the Complaint with prejudice.  *See, e.g.*, *Davis*, 797 F.Supp.3d at 1275–76.

## II.   ARGUMENT

### A.   Text Messages Are Not "Telephone Calls" under Section 227(c)(5).

As demonstrated in the Motion, the ordinary meaning of the statutory phrase "telephone call" does not encompass text messages.  *See* Mot. at 6–9.  In brief, the ordinary meaning of a telephone call involves the use of a sound and a voice, which are not present in the alleged text messages.  *See id.*  Most courts within the Eleventh Circuit have reached this same conclusion regarding the term's ordinary meaning.  *See id.* (citing *inter alia Davis v. CVS Pharmacy, Inc.*, 797

F.Supp.3d 1270 (N.D. Fla. 2025); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025); *James v. Smarter Contact, Inc.*, No. 8:25-cv-01657-KKM-SPF, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026)).

Plaintiff's Opposition devotes only one paragraph to addressing these cases and the ordinary meaning of the term "telephone call." Opp. at 6. In that single paragraph, Plaintiff incorrectly contends that the interpretation of "telephone call" as requiring a sound and voice "substitute[s] today's colloquial meaning of 'call' for the original public meaning at the time of the TCPA's enactment in 1991." *Id.* This is precisely backwards. As explained in the Motion, the interpretation of "telephone call" as requiring the use of a sound and voice is based on contemporary understanding of the meaning of "telephone" and "call" at the time of the TCPA's enactment. *See* Mot. at 8 (citing *Telephone*, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1952 (2d ed. 1987); *Call & Telephone*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 162, 1211 (10th ed. 1993)). Plaintiff's argument is anachronistic, because Plaintiff asserts that the 1991 meaning of "telephone call," as a noun, could encompass communications—text messages—that were not possible to make at the time via a telephone. *See, e.g.*, *James*, 2026 WL 879244, at *3–4 (analyzing contemporary dictionaries and concluding "telephone call" does not encompass text messages); *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25-cv-01282, 2026 WL 591842, at *3 n.5 (N.D. Ohio Mar. 3, 2026) (Plaintiff's interpretation "would suggest that any communication from a modern cell phone is a 'telephone call' under the TCPA, which might include messages sent through Internet applications downloaded onto a cell phone. This broad interpretation of 'telephone call' is not supported by the term's plain meaning as defined in 1991.").

Rather than address the ordinary meaning of the statute, Plaintiff makes much of the Ninth Circuit's decision in *Howard v. Republican National Committee*, 164 F.4th 1119 (2026). *See, e.g.*,

Opp. at 6–8.  Plaintiff fails to mention, however, that the Ninth Circuit's decision in *Howard* interpreted the meaning of "call" for a § 227(***b***) claim, not "telephone call" for a § 227(***c***) claim.  *See* 164 F.4th at 1125 (citing 47 U.S.C. §§ 227(b)(1)(A), 227(b)(1)(B)).  The Motion to Dismiss already addressed that these two subsections are meaningfully different.  *See* Mot. at 16 ("Importantly, § 64.1200(a) was promulgated under § 227(b)—which governs restrictions on the use of 'any automatic telephone dialing system or an artificial or prerecorded voice'—and not under § 227(c).").[1]  As courts outside the Ninth Circuit have recognized, *Howard*'s reasoning is inapplicable because "calls" under § 227(b) is a distinct term from "telephone calls" in § 227(c).  *See, e.g.*, *James*, 2026 WL 879244, at *3–4; *Stockdale*, 2026 WL 591842, at *3 n.5 (rejecting *Howard* and other interpretations of "telephone call" which "relied on definitions of 'call' contemporaneous with the TCPA's enactment but failed to consider the contemporaneous definition of the modifying 'telephone.'").

As demonstrated in the Motion, the interpretation of telephone call as requiring a voice or sound—and not encompassing text messages—is supported by canons of construction, including the meaningful variation canon and the canon against surplusage.  *See* Mot. at 10–12.  "Congress has amended the TCPA as recently as 2019 to add the phrase 'text message' in a neighboring provision, § 227(e)(8)(C), and chose to leave § 227(c)(5) unamended."  *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-02811-TWT, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026).  Accordingly, "Congress intended § 227(c)(5) to encompass only telephone calls because 'when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is,

---

[1] Moreover, the *Howard* court affirmed a dismissal of the plaintiff's § 227(b) claim on the basis that the defendant did not "make" or "initiate" a call "using" a prerecorded voice, which makes the *Howard* court's interpretation of the meaning of "call" strictly dicta.  *See* 164 F.4th at 1125 ("Howard has not alleged that the RNC '*ma[d]e*' or '*initiate[d]*' that 'call' '*using*' the artificial or prerecorded voice, as required to state a claim under the subsections." (emphasis in original)).

4

the distinct words have different meanings.'" *Id.* (citations omitted). Plaintiff does not meaningfully dispute that interpreting "telephone call" under § 227(c)(5) to include text messages would render superfluous the terms "text message" and "message" in other provisions of the TCPA. *See* Opp. at 7 (characterizing the surplusage as "belt-and-suspenders."). Plaintiff instead argues that the surplusage canon generally is "not an absolute rule." Opp. at 7 (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013)). But reliance on *Marx* to gloss over the canon is not proper. In *Marx*, the Court declined to apply the canon because (1) there was "no interpretation of [the statute that] gives effect to every word," (2) redundancy was not unusual "in statutes addressing costs," and (3) the interpretation chosen by the Supreme Court would not "render superfluous another part of the same statutory scheme." 568 U.S. at 385–86. None of these reasons is applicable here. TAOS's proffered interpretation is the only one that would give effect to every word, § 227(c)(5) is not a "statute[] addressing costs," and Plaintiff's interpretation would render superfluous the TCPA's separate sections specifically distinguishing calls from text messages. *See, e.g.*, 47 U.S.C. § 227(i)(1)(A) ("a call made or a text message sent").

Plaintiff also argues that the FCC's interpretation of "call" as encompassing text messages is somehow "in force" and suggests that "appropriate respect" to the FCC requires this Court to "uphold" that definition. Opp. at 7. That is not the law anymore. *See* Mot. at 12–17. As this Court has explicitly recognized, since *Loper Bright*, agency interpretations are not binding on this Court because "agencies have no special competence in resolving statutory ambiguities" and "courts must exercise independent judgment in determining the meaning of statutory provisions." *Castro v. Parra*, No. 1:26-cv-20422-BB, 2026 WL 788019, at *4 (S.D. Fla. Mar. 20, 2026) (Bloom, J.) (quoting *Loper Bright*, 603 U.S. at 400–01) (rejecting agency interpretation of statute). Moreover, the notion that courts are bound to the FCC's interpretation of the TCPA was

specifically rejected in the Supreme Court's 2025 decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp. See* 606 U.S. at 168 ("The District Court is not bound by the FCC's interpretation of the TCPA."). Despite this clear rebuke of the weight of the FCC's interpretation of the TCPA, Plaintiff heavily relies on two FCC orders interpreting the TCPA: (1) *In re Rules & Regs. Implementing the [TCPA]*, 18 F.C.C. Rcd. 14014 (2003) ("2003 FCC Order") and (2) *In re Targeting & Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247 (2023) ("2023 FCC Order").

Plaintiff's reliance on these FCC orders is fatally flawed for at least two reasons. ***First***, the 2003 FCC Order, by its own terms, interpreted § 227(***b***), not § 227(***c***). *See* Mot. at 16–17; 2003 FCC Order at 14115, ¶ 165 ("We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number . . . This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls" (citing 47 U.S.C. § 227(b) of the TCPA; 47 C.F.R. § 64.1200(a)[2])). Plaintiff responds that the FCC's statement that the TCPA encompasses text messages is phrased "broadly," but this argument in no way shows that the FCC interpreted the statutory meaning of "telephone call" in § 227(c). *See* Opp. at 9.[3] Plaintiff's other response—that the 2003 FCC Order was "comprehensively addressing the TCPA's regulatory framework"—has no citation and in fact ignores that in the 2003 FCC Order, "[t]he [FCC]

---

[2] 47 C.F.R. § 64.1200(a) was promulgated under § 227(b)—which governs restrictions on the use of "any automatic telephone dialing system or an artificial or prerecorded voice"—and not under § 227(c).

[3] For the same reason, Plaintiff's reliance on *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) is misplaced, as the Court "did not address the statutory term 'telephone call' at issue [in § 227(c)(5)]; it dealt with a broader prohibition on 'any call' [under § 227(b)(1)]." *Davis*, 797 F.Supp.3d at 1273.

***decline[d] to make any determination about the specific contours of the TCPA's private right of action***." 2003 FCC Order, 18 FCC Rcd. at 14136, ¶ 206 (emphasis supplied).

***Second***, Plaintiff contends that the 2023 FCC Order "expressly reaffirmed that text messages fall within the scope of the TCPA's Do Not Call provisions under § 227(c)." Opp. at 9. More accurately, the 2023 FCC Order contains no citation to § 227(c)(5) or the private right of action. *See generally* 2023 FCC Order. Further, while Plaintiff asserts that the 2023 FCC Order "addresses the very provisions at issue here and has not been set aside by any court," Opp. at 9, the Eleventh Circuit vacated a challenged part of the 2023 FCC Order because the FCC "exceeded its statutory authority under the TCPA" by issuing regulations which "conflict with the ordinary statutory meaning." *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 307–08 (11th Cir. 2025).

Plaintiff cites to this Court's decisions in *Bosley v. A Bradley Hosp. LLC*, No. 1:25-cv-22336-BB, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) and *Taylor v. Cider (US) Holding Ltd.*, No. 25-cv-24496-BB, 2026 WL 91453, at *2 (S.D. Fla. Jan. 13, 2026), where this Court stated that "a text message constitutes a 'call' under the TCPA." *See* Opp. at 4–5. As explained in the Motion, the issue of whether a text message constitutes a call under the TCPA was uncontested in both *Bosley* and *Taylor*, and the Court did not have occasion to interpret the statute independently as required by *Loper Bright* and *McLaughlin*. *See* Mot. at 15–16. Plaintiff argues that "uncontested" is a "misleading" characterization, yet acknowledges that defendants in those cases "chose not to contest the issue." Opp. at 5. Plaintiff's reliance on *Bosley* and *Taylor* as dispositive of TAOS's argument here is thus misplaced. Dicta from prior decisions on an undisputed issue is not persuasive precedent, even if the issue implicitly relates to an element necessary to state a claim and the Court assumed the element was satisfied. *See, e.g.*, *United States v. Trump*, 740 F.Supp.3d 1245, 1293 (S.D. Fla. 2024) ("In sum, the prefatory, passing remark in

*Nixon* about 28 U.S.C. §§ 509, 510, 515, 533, does not stand as binding precedent for a point that was not raised, argued, disputed, or analyzed in that case, even if possibly assumed.").

In the absence of any reasoned explanation of why Section 227(c)(5)'s use of the phrase "telephone call" should apply to text messages, Plaintiff points instead to a so-called "overwhelming majority of district courts" which have so held.  Opp. at 1; *see also id.* at 5–6 (collecting cases).  In addition to erroneously relying on *Bosley* and *Taylor*, Plaintiff's cited decisions are unconvincing because they depend on **out-of-Circuit** decisions which do not follow the Eleventh Circuit's post-*Loper Bright* and *McLaughlin* approach to statutory interpretation without deference to FCC rulemaking.  *Compare, e.g.*, *Mey v. Liberty Home Guard, LLC*, No. 5:23-cv-00281, 2026 WL 486556, at *6 (N.D. W.Va. Jan. 5, 2026) ("the FCC's interpretation remains entitled to respect") *with Ins. Mktg. Coal. Ltd.*, 127 F.4th at 311 (vacating FCC order as exceeding authority under the TCPA because order conflicted with ordinary statutory meaning).

The ordinary meaning and canons of construction confirm that the phrase "telephone call" in 1991 did not encompass text messages.  Plaintiff's Opposition, which relies on unreasoned and partially vacated FCC orders and out-of-Circuit decisions, does not change this conclusion.  For this reason, the Court should grant the Motion and dismiss Plaintiff's TCPA claims with prejudice.

> **B.     The Opt-In Confirmation Messages Are Not Telephone Solicitations or Telemarketing.**

The Motion should be granted for the independent reason that Plaintiff's TCPA claims fail because the Opt-In Confirmation Messages are not "telephone solicitations" or "telemarketing." *See* Mot. at 17–20.  An element of Plaintiff's TCPA claims is that Plaintiff received a telephone call that is for "the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(13), (15).  Other courts have similarly held communications relating to consent to receive further marketing are not

themselves "telephone solicitations" or "telemarketing." *See Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F.Supp.3d 466 (S.D.N.Y. 2018) (granting motion to dismiss TCPA claim; holding text messages that "set[] forth the terms and conditions by which [plaintiff] could consent to receive marketing materials" were not telemarketing). The "purpose" of a telephone call is determined by its content, not the motivation the call was made. *See, e.g.*, *Newhart v. Quicken Loans Inc.*, No. 9:15-cv-81250, 2016 WL 7118998, at *3 (S.D. Fla. Oct. 12, 2016) ("[D]eciding whether the telemarketing consent rules apply will require an examination of individual calls, not the 'overall campaign.'"). Plaintiff argues that a Ninth Circuit decision requires consideration of the "purpose" of initiating a call, rather than the purpose of the call itself. *See id.* at 10 (citing *Coffey v. Fast Easy Offer, LLC*, No. 25-4066, 2026 WL 1614175, at *4 (9th Cir. June 4, 2026)). Plaintiff is wrong. *Newhart*, 2016 WL 7118998, at *3. Indeed, courts in this District have rejected similar attempts to characterize calls as solicitations by relying on a caller's commercial motive beyond the face of the call or message. *See Edelsberg v. Vroom, Inc.*, No. 16-cv-62734, 2018 WL 1509135, at *7 (S.D. Fla. Mar. 27, 2018) ("[Plaintiff] cannot rely on [defendant's] overarching business model . . . to transform the stated purpose of [defendant's] text message.").

Within the Eleventh Circuit, Plaintiff argues that two other Florida courts have held other kinds of communications to plausibly constitute "telephone solicitations" or "telemarketing." *See* Opp. at 10–11 (citing *Germain v. Mario's Air Conditioning and Heating, Inc.*, No. 8:23-cv-671-TPB-CPT, 2025 WL 2229885, at *2–3 (M.D. Fla. Aug. 5, 2025); *Lawson v. Visionworks of America, Inc.*, 741 F.Supp.3d 1251, 1254–55 (M.D. Fla. 2024)). Neither of those cases, however, involved communications seeking consent to receive future telemarketing messages, as is at issue here. *Compare Germain*, 2025 WL 2229885, at *2 ("Mario's AC is reminding you to consider flipping off the breaker to your AC unit during a hurricane. We are here for you. 727-306-0182

9

STOP to end.") and *Lawson*, 741 F.Supp.3d at 1253 ("Defendant [] sent him numerous text messages to remind him that he was 'overdue for [his] eye exam' and providing a link to schedule an exam.") *with* SAC ¶ 18 ("Reply Y to subscribe to recurring automated personalized marketing alerts. . . .").

Neither of Plaintiff's arguments is a basis to ignore what is established from the face of the SAC: the Opt-In Confirmation Messages are not telephone solicitations or telemarketing. Accordingly, the Motion should be granted, and Plaintiff's TCPA claims dismissed with prejudice.

## C.      Plaintiff's CTSA Claim Fails for Multiple Reasons.

Finally, as explained in the Motion, Plaintiff's CTSA claim should be dismissed because the Court should decline to exercise supplemental jurisdiction and because Plaintiff has failed to allege an "ascertainable loss of money or property."  Mot. at 20–21.  Plaintiff's Opposition does not dispute that supplemental jurisdiction over the CTSA claim would be inappropriate were this Court to dismiss Plaintiff's TCPA claims. *See generally* Opp. at 18.  Instead, Plaintiff argues that he has stated a viable CTSA claim because the alleged text messages at issue state that "Msg and data rates *may* apply."  *Id.* at 13 (citing SAC ¶ 18) (emphasis supplied).  Noticeably absent from the SAC is any allegation that Plaintiff actually incurred any message or data charges for receiving five text messages.  *See generally* SAC ¶¶ 50–51 ("Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages.").  *Contra* Opp. at 18 ("These are allegations of actual monetary cost, which need not be proven with specificity at this stage").  For these reasons, the Court should grant the Motion as to Plaintiff's state-law CTSA claim.

## III.      CONCLUSION

For the reasons above and as more fully explained in the Motion, the Court should dismiss Plaintiff's SAC in its entirety with prejudice.

10

Dated: July 9, 2026

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By: /s/ *Jason Daniel Joffe*
Jason Daniel Joffe
Florida Bar No. 0013564
200 S. Biscayne Blvd., Suite 3400
Miami, FL 33131
Telephone: (305) 577-7000
Facsimile:  (305) 577-7001
Email:jason.joffe@squirepb.com

Kristin L. Bryan *(pro hac vice)*
E-mail: kristin.bryan@squirepb.com
Shing Tse *(pro hac vice)*
Email: shing.tse@squirepb.com

*Attorneys for Defendant The Art of Shaving-FL,
LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 9, 2026, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to

all counsel of record that are registered with the Court's CM/ECF system.

/s/ *Jason Daniel Joffe*
Jason Daniel Joffe